HOUSTON EAST & WEST TEXAS RAILWAY COMPANY V. NATHAN STELL.

Decided February 26, 1902.

**1.—Railway Company—Passenger on Freight Train—Permit—Representation of Agent.**

Where plaintiff knew that the rules of the railway company required that in order for him to ride on a freight train he must get a permit from the ticket agent, and that such agent had no authority to say that he could get it of the conductor, he was not entitled to recover for his ejection from the train by the conductor because he had no permit.

**2.—Same—Charge.**

A charge that the defendant company would be liable if the ticket agent made such representation was erroneous, since it in effect was a charge that plaintiff's knowledge of the agent's lack of authority to make the representation was no defense.

Appeal from Liberty. Tried below before Hon. L. B. Hightower.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin,* for appellant.

*A. W. Boyd, Stanley Thompson,* and *Stevens & Marshall,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee sued appellant to recover damages alleged to have accrued by reason of his unlawful expulsion from a freight train on which he was riding from Diboll to Lufkin, stations on appellant's line of railway. The trial resulted in a verdict and judgment for appellee in the sum of $1500.

Appellee alleged that he procured a ticket, on April 30, 1899, from the agent at Diboll station which entitled him to ride on all trains from that station to Lufkin, and got on a train which caried both freight and passengers, and after the train had gone about two miles he, with other passengers, was ejected by the conductor because he refused to pay cash; that the night was dark, and it was raining, and that he was compelled to walk back to Diboll. His damages are stated as follows: "That at the time of said occurrence plaintiff alleges the truth to be that he was taking, and had the morning of the occurrence taken, calomel, and so informed said conductor and agent of said fact at the time he was ejected from said car; that by reason of unlawful acts plaintiff became

and is now salivated, and has lost eight of his teeth, suffered intensely
with sore mouth, sloughing off of flesh caused as aforesaid, and that by
reason of said unwarranted acts his whole system has become affected,
and that he is now suffering both mentally and physically by reason of
said acts and is now suffering from said acts, and that he has not since
said acts, nor is he now, and he alleges that he will not be, able to either
work mentally or physically for a long time, and he alleges that said
injuries caused as aforesaid are permanent." Tersely stated, the allega-
tions amount to a charge that by the ejection from the cars and con-
sequent exposure salivation was produced from which the injuries
resulted.

On the trial of the cause Dr. Burroughs, the physician who had been
attending appellee, swore that "salivation is produced after a man has
taken mercury and then submits to the vicissitudes of the weather, and
as cold or wet, or anything that suddenly stops the secretions of the
skin. * * * To the best of my knowledge and belief it is not the
prevailing opinion of physicians who have been educated within the last
ten or fifteen years that exposure does not produce salivation." Dr.
Mynett, witness for appellant, testified: "I do not think his getting wet,
after taking the calomel, would make any difference; the absorption of
the calomel in the system produces salivation; exposure does not have
anything to do with it at all." Dr. Boyd, witness for appellant, swore:
"Exposure to damp and cold weather after taking calomel does not have
any effect towards producing salivation. I base that conclusion on
teaching in the first place, and the next place from observation. I get
that from all authorities I have read and I can name you several. The
prevailing, accepted opinion of the leading medical fraternity, as to
exposure to cold or damp weather producing or not producing salivation
is, it has no effect. * * * The medical profession of to-day accepts
as the true theory of salivation the amount of mercury absorbed and the
length of time it would be retained in the system, and the theory of
exposure causing salivation is not entertained in the scientific world at
all, so far as I know."

As will readily appear the testimony of these witnesses raised the
issue sharply as to whether the exposure to the rain produced the sali-
vation which caused the injuries to appellee. The issue thus raised was
not presented to the jury except in a very general way by a requested
charge of appellant, which was given, and appellant requested the fol-
lowing charge: "If you find as a fact that the plaintiff was salivated,
then, before you can return a verdict for the plaintiff in this case, you
must believe from a preponderance of the testimony, in this case, that
the plaintiff was not salivated by reason of having taken an overdose of
calomel, or that he was not salivated by permitting a quantity of calomel
to remain in his system too long; and you must further find from a pre-
ponderance of the evidence that the salivation (if any) was caused as a
proximate result by reason of his exposure brought about by his leaving
the defendant's train at the time and under the circumstances that he

did, and that he was improperly ejected from said train, and that such salivation, if any, was the reasonable or probable result of such exposure, and unless you so find the facts to be, your verdict should be for defendant."

The requested charge would certainly not be adopted as a model or a precedent, and yet we think it embodies, when analyzed, the law of the case. The first part of the charge may be treated as surplusage, because if the jury had found that the salivation was not a proximate result of the expulsion from the train, and that appellee was not improperly ejected, no damages would have been allowed, whether it was found that the salivation did or did not result from other causes. The requested charge presented an issue clearly raised and sharply defined by the evidence, and appellant had the right to have it presented to the jury. Railway v. McGlamory, 89 Texas, 635; Railway v. Rogers, 91 Texas, 52; Railway v. Casseday, 92 Texas, 525.

There is no merit in the third, sixth, seventh, and eleventh assignments of error. The agent at Diboll did not violate any rule in not giving a permit to appellee to ride on the freight train. He had not been furnished any permits and could not give them, of course. The law as to the assignments above named is stated correctly, we think, in cases of Railway v. White and Jackson, 61 Southwestern Reporter, 436 and 440, which are companion cases to this.

None of the assignments of error save the one hereinbefore discussed is well taken.

For the error in failing to give the special charge hereinbefore copied, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

Appellee's motion is based on the statement that the refusal of the charge for which we held that the judgment should be reversed was given in substance in other requested instructions, and the record may bear out the contention.

Another question, however, is presented by the record, which will necessitate an adherence to the judgment reversing the judgment of the lower court and remanding the cause.

In the answer filed by appellant one of the issues raised was the knowledge of appellee as to a lack of power on the part of the ticket agent to abolish a rule that passengers in order to ride on freight trains must, at all stations where tickets are sold, obtain a permit as well as a ticket from such agent.

It may be stated as settled that a railroad company may make and enforce a rule forbidding passengers to be carried on freight trains, or if it permits passengers on freight trains, it may, after due notice, require such passengers to provide themselves with a particular kind of ticket. Elliott on Railroads, sec. 200, and authorities cited.

It may be also stated as the established doctrine that the employes of a railway company can not abrogate rules governing passengers established by the employer, and that a person who knowingly acts in violation of a reasonable regulation of the railway company even with the consent of an employe, whom he knows has no authority to abrogate the rule, occupies the attitude of a trespasser towards the company and can not claim and maintain the right of a passenger. Railway v. Moore, 49 Texas, 31; Prince v. Railway, 64 Texas, 144; Railway v. Campbell, 76 Texas, 174; Railway v. Black, 87 Texas, 160; Railway v. Hayden, 6 Texas Civ. App., 745.

In the last named case it was said if the rules of the company forbade persons being carried on freight trains, and the conductor had no authority to relax the rule, and Black took passage upon the train with knowledge of the facts, the consent of the conductor would not make him a passenger, rendering the company liable for injuries received by him from wrongful acts of a servant done without the scope of his employment. The judgment was reversed because the charge made the railway company liable regardless of whether the party injured knew of the rule prohibiting persons from riding on freight trains. Afterwards the cause, under the style of Railway v. Black, was again tried and appealed to the same court, which held that he was a passenger and affirmed a judgment, which on writ of error was reversed by the Supreme Court in Railway v. Black, above cited.

The Supreme Court in that case approved the doctrine as held when the case was first before the Court of Civil Appeals, and held that "a railroad company may carry passengers and freight by different trains, and, when such provision is made, the conductor and brakeman have no implied authority to receive passengers upon freight trains."

It will be noted that in all the cases cited conductors and brakemen form the class of employes mentioned, and the facts establish cases of violation of instructions on the part of the employes, and they are cited more for the purpose of showing that knowledge of the want of authority on the part of the employe to abolish a rule will prevent a recovery, than as tending to show a lack of authority in the ticket agent.

The conductor in this case was acting under instructions and performing his duty to the carrier, yet if the agent had induced appellee by his representations to get on the first train, the railroad company might be held liable. Under the powers granted to the agent a ticket buyer would undoubtedly be authorized to assume that the ticket agent had the authority to bind the company by his representation that the permit, which appellee knew was essential to his passage on the freight train, could be procured from the conductor. But suppose he knew that the agent had no such authority, and knew that it was absolutely essential for him to get the permit before he got on the train, he then was an intruder and a trespasser on the train, and was entitled to nothing at the hands of the carrier except what is due to such trespasser. According to the testimony of appellee the jury might have found that he did not

know of a lack of authority in the agent to set aside the rule of the company, but the charge must be viewed in the light of the whole testimony. The evidence disclosed that appellee knew that a permit was necessary because he applied for one, and because he had been told by the agent at Lufkin never to get on a freight train without a permit.   He does not swear that he was misled by the representation of the agent, or that he had told the conductor that the agent had told him that he could get a permit on the train, and on the other hand testimony was introduced by appellant to the effect that appellee and his two companions had been asked if they did not know that they must have permits in order to ride on a freight train, and they replied that they did, but thought it would be all right, and that it would not make much difference.

In view of the testimony it was error for the trial judge to disregard the issue of appellee's knowledge of want of authority upon the part of the agent to make such representation as he was said to have made. If appellant's testimony was true, appellee knew that the agent had no such authority, and was merely running his chances when he got on the freight train, and under such a state of facts he certainly could not recover.   The court instructed the jury, however, that the appellant was liable if the agent made the representation, which was equivalent to informing the jury that knowledge of the lack of authority upon the part of the agent was no defense and whether the inducement for getting on the train was the representation or not appellant was liable.

It is true that the identical charges given by the court were held to be correct in the companion cases to this cited in our former opinion, but the question of knowledge of a lack of authority in the agent to so change the rule was not raised or adverted to, but the affirmance was based on the practical abrogation of the rule by its customary violation. It may be contended in this case that the error in the charge should not avail, as the verdict could be justified on the ground of abrogation of the rule by its violation, and that contention would be well founded if the uncontradicted evidence showed such abrogation.   The evidence on that point is sharply contested by appellant, it being shown by it that there was no violation of the rule, but strict enforcement of it.

The law of agency as applied to railroads is the same as it is when applied to individuals, and the agent acting within the apparent scope of his authority will bind the principal.   The enunciation of that rule was all that was called for in the case of Railway v. Jackson and White, 61 Southwestern Reporter, 436, 441, and was all that was done by the court.   The exception, that when the party with whom the agent was contracting knew he had no such authority, that the rule does not apply, was not raised and the court did not discuss it.   There is therefore no conflict between the rule laid down in the cases cited and that enunciated in this.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.