The magnitude of the verdict rendered against the defendant; the remarkable body of evidence unsuccessfully given in its favor; and the extraordinary incident which marked the close of the trial, tend to make any errors in the charge of the court to the jury of more than common importance and to justify an inference that they worked harm to the defeated party.
Certain facts in the case are entirely undisputed, and upon them the question arises most important to consider. The tram arrived at the One Hundred and Tenth street station, either precisely upon its schedule time, or a little behind that *Page 284 
time. No one among all the witnesses pretends, and no circumstance proved indicates, that it reached the station in advance of its appointed time. Upon its arrival it stopped and remained stationary until all the passengers desiring to leave the train had left it and disappeared from the conductor's sight, and all those upon the platform who desired to take the train had gone into the cars; and then when the conductor, who stood watching the exit and ingress of his passengers, observed that all had been accommodated, and that the station platform was cleared and empty, and that no conceivable duty of delay remained, he gave the signal for starting and turned to enter or entered the car; the engineer drew in his head and pulled his lever; and the train started. At that precise moment, according to her own account of the accident, the plaintiff had reached one of the cars and taken hold of its rail and put one foot on its step, and then, and not before, the train moved and she was thrown down and seriously injured. She was a belated passenger as clearly appears from her statement taken by itself. When she bought her ticket at the office before ascending the stairs she asked if the signal bell rung by electricity from One Hundred and Twenty-fourth street had sounded, and was told that it had, and that she had better hurry up. This was a plain intimation that she was late, and we may readily suppose that she moved up the stairs with some degree of rapidity and haste. Just as she reached the top step of the flight she says that she met two gentlemen, and asked them "did you miss the train?" The inquiry shows her consciousness that the cars had started, or that she knew or feared that she was late. If this question was asked, as she says it was, just as she was going up the final step to the platform, she must have been at that moment in plain sight of the cars. If they were then, as consistently with her story they must have been, motionless and waiting, her question is inconceivable. If at that moment they were in motion, her inquiry would have been natural. As she stepped upon the station platform, and but a few feet from the train, she admits that no conductor or brakeman was in sight. She was no stranger to the scene. *Page 285 
She had taken the train at that point very many times, and always before had seen present the conductor and brakemen. The warning of the ticket-agent, her inquiry of the two passengers, and her observation of the vacant platform, all demonstrate that she was late and in haste, and show a consciousness on her part that if the train was not actually moving, it was at least about to move. But since the verdict of the jury involves a finding that the cars were not in motion, and that she had no reason to believe that they were about to start, we are permitted only the inference which at least harmonizes much of the testimony, and is inevitable, if the plaintiff's story be true, that she came upon the platform after the signal to start had been given, and just as the engineer was about to apply the steam, and at a moment when she could not see the conductor, and he was unaware of her presence. On this state of facts the defendant, as was its right, presented several propositions to be charged which were granted until the last was reached. That was stated thus: "When the people who desired to stop at One Hundred and Tenth street station had left the train, and the persons who were then on the station-platform had entered on the train the defendants had the right to raise the drop platform and start the train." This was in all respects an entirely sound and correct proposition. The object of stopping was to discharge and receive passengers. When that object was fulfilled, the station platform cleared, and nobody left to be accommodated so far as the conductor could see or know, it was not only his right but his duty not to linger but to give the signal for starting. The proposition relatively to the admitted facts served to eliminate one possible ground of negligence from the minds of the jury. That there may have been others is of no consequence. This particular one, that the defendant had no right to start the train at the moment when he did, the defendant had a right to dissipate by the mouth of the court. The trial judge refused to charge this proposition, except with a qualification which annulled and practically destroyed it, or at least may have dangerously misled the jury. That qualification was "provided *Page 286 
that they had given each person having a right to enter upon that train as a passenger the opportunity to get on board." This proviso could bear upon the facts of the case only in one way. The jury might naturally understand it to mean that when the plaintiff had bought her ticket at the office below she acquired upon the instant the right to take passage on this particular train and the company were bound to know that she was coming and hold the train until her arrival, and so the conductor was negligent in starting the train at the moment when he did. Unless it meant this we can conceive of no possible meaning pertinent to the case, in which event it amounted to a refusal to charge the proposition requested. The jury thus might understand that they were told as matter of law that the sale of a railroad ticket at a ticket office before the arrival of a train gives a specific right to the purchaser to take that particular train which is then at the station or is about to arrive, and that it must be held long enough for such passenger to go upon it, and since in this case it was not so held, the jury might find it an act of negligence in the conductor to start it when he did. That assumes that the plaintiff's ticket gave her a special right to take that train. There is not a particle of proof of any such contract. The ticket gave her a general right to take any train bound to her destination which stopped at that station, provided she presented herself in time and did not require its delay for her special benefit. It gave her no right to delay the train at all. It imposed upon her the duty of presenting herself in time or of waiting for a succeeding train. Suppose that when she bought her ticket the train above was motionless at the station and while she was ascending the stairs it was moving with the platforms up so that she could not take it. Is it contended that she could treat that as a breach of her contract with the company and as a refusal to carry her, which would found an action for damages? If the doctrine of the qualification be sound it is negligence, as matter of law, to sell tickets without closing the office long enough before the departure of the train to enable every purchaser to reach it, and it must start upon signal from the ticket office *Page 287 
that such time has been given. No such rule has ever been adopted. At the ticket office in question the customary way was to open the window at any time for the sale of tickets, or the answer to inquiries, and that fact was drawn out by the plaintiff's counsel. The purchase of the ticket gives no right to the passenger except upon the condition of presenting herself for passage before the signal is given for a start, and, if she comes after that, it is not negligence as against her that the train starts in obedience to it. Whether there should have been gates to prevent the passage of belated passengers, or the officers of the train should have watched the platform to warn them off, has nothing to do with the present question. It was the defendant's right to eliminate from the case one ground of negligence, and that right was not only denied but in such a manner as to make that a prominent ground of recovery.
The judgment should be reversed and a new trial granted, costs to abide the event.
RAPALLO, MILLER and EARL, JJ., concur; RUGER, Ch. J., ANDREWS and DANFORTH, JJ., dissent.
Judgment reversed.