Adopted December 9, 1890.

---

GEORGE A. EDDY AND H. C. CROSS, RECEIVERS, V. J. W. RIDER.

No. 3358.

1. **Intersection of Railways Made a Depot.**—Article 4238, Revised Statutes, provides that the point of intersection of two railways shall be a depot for freight and passenger business on both lines. The roads so crossing each other can not alter the general law prescribing the duties of railways to ship freight and carry passengers from the several railway depots.

2. **Case in Judgment.** — The defendant company has a ticket office on the west side of Greenville. The road intersects the St. Louis, Arkansas & Texas Railway track about half a mile east of the business part of Greenville. At the intersection is no ticket office, though passengers are usually taken and discharged at the place. Upon two of the freight trains of the defendant passengers are allowed to be carried. Upon one of them the plaintiff embarked without a ticket. He tendered the statutory fare, three cents; it being refused, he tendered four cents. This also was refused, the conductor explaining that by reason of an order of the receivers he was forbidden to carry any passengers except those having tickets. The conductor without rudeness caused plaintiff to leave the car. The delay from waiting until the next train caused a misconnection and a day's further delay in reaching home. Judgment for $100 was given by the court for plaintiff. *Held:*

1. The intersection was a depot, and it was the duty of the defendant to have a ticket office at that place. This duty was not performed by having a ticket office on the west side of Greenville.

2. The road could make reasonable rules regulating its business, but they could not be made and enforced if violative of the law, without liability to a person injured by their enforcement.

3. Plaintiff was entitled to be carried at rate of three cents per mile, there having been no opportunity afforded him to obtain a ticket.

APPEAL from Hopkins. Tried below before Hon. E. W. Terhune.

A statement is given in the opinion.

*Peteet & Crosby,* for appellants.— 1.   A regulation of a railway company requiring passengers to provide themselves with tickets before they are entitled to ride upon its freight trains is a reasonable regulation and is not in conflict with the statutes of this State, and any person desiring to take passage thereon must comply with said regulation before he can demand transportation as a passenger on said trains.   Rev. Stats., art. 4258b, sec. 9;  Railway v. Goldstein, 2 Ct. App. C. C., secs. 274, 275, and authorities; 2 Wood's Ry. Law, pp. 1405, 1406, 1410, 1424; 3 Wood's Ry. Law, p. 1430.

2.   A railway company has a right to make reasonable regulations for conducting its business, and parties dealing with it must conform to such regulations.  Rev. Stats., art. 4135;  Railway v. Moore, 49 Texas, 31;  Prince v. Railway, 64 Texas, 144; 2 Wait's Act. and Def., secs. 88, 89; 2 Wood's Ry. Law, p. 1411, secs. 352, 356.

3.   A railway company is not required by the statute of this State to erect a depot or passenger house at the crossings or intersections of its road with other railroads in cities and towns where a union depot is established.  Acts 21st Leg., p. 19, art. 4238;  Railway v. Graves, 2 Ct. App. C. C., sec. 679.

4.   Railroad companies have a right to establish a rule requiring all passengers to purchase tickets before entering the cars, and refusing to allow conductors to collect cash fares on certain freight trains.   3 Wood's Ry. Law, sec. 361.

5.   A rule requiring passengers who ride on freight trains to procure tickets before getting on said trains is reasonable, and posting copies thereof conspicuously in the cabooses of said trains and in the passenger depots on their line of road for a reasonable length of time is sufficient, and no actual notice of said rule is required in order to justify their expulsion when they fail to comply therewith.   3 Wood's Ry. Law, sec. 360, p. 1424; 2 Wood's Ry. Law, sec. 356, p. 1415.

No brief for appellee.

STAYTON, CHIEF JUSTICE.—On May 26, 1889, appellants were in charge of and operating as receivers the Missouri, Kansas & Texas railway, which ran between Greenville and Jefferson, via Pittsburg.

.  They had a ticket office on the west side of the city of Greenville, and about one-half mile east of the business part of the city the railway controlled by them crossed the St. Louis, Arkansas & Texas Railway track, but at the intersection there was neither depot building nor ticket office.

On the day above mentioned, and for a long time before that date, appellants had received passengers at the intersection of those roads, and they carried passengers on several of their freight trains, and one on which this was permitted was train No. 86.

On that day, being at Greenville, appellee desired to go to his home,

which he could reach by another road from Pittsburg on the same day if he could make the connection with that road at Pittsburg, which freight train No. 86 would do, but he could not make that connection if he waited at Greenville for the next regular passenger train.

He went to the intersection of the two roads, as he and others had been accustomed to do, and when train 86 stopped there he entered the car intended for occupancy by passengers. The train started, and when the conductor came to appellee for his fare he tendered the sum necessary to pay three cents per mile to Pittsburg, but this the conductor refused to receive, when he tendered a sum sufficient to pay his fare to Pittsburg at the rate of four cents per mile, which the conductor also refused to receive, on the ground that by the rules of the receivers he was only allowed to carry passengers on his train who held tickets.

The conductor thus explained to appellee the cause of his refusal to carry him on payment of passage in money, and, without rudeness, required him and others, who were situated as was he, to leave the train.

Appellee was thus compelled to wait for the passenger train, on which he went to Pittsburg, but reached there too late to make connection with the train that reached his home that day, and in consequence of this he was delayed in Pittsburg nearly a day, and was one day later in reaching his home than he would have been had he been permitted to travel on freight train No. 86.

This action was brought to recover damages on this state of facts, and on trial without a jury judgment was rendered in his favor for $100.

The rule which controlled the action of the conductor was as follows:

"MISSOURI, KANSAS & TEXAS RAILWAY.

"*Geo. A. Eddy and H. C. Cross, Receivers.*

"OFFICE OF TRAIN MASTER,
"GREENVILLE, TEXAS, May 18, 1889.

"*All agents and freight conductors, D. and G., Dallas and Waco, and Jefferson sections:* Nos. 73 and 74 on D. and G. section and 85 and 86 on Jefferson section are the only freight trains that are allowed to carry passengers. All passengers on these trains must be provided with tickets or passes before getting on, as freight conductors under no circumstances must collect cash fares, but must see that all passengers in their caboose are provided with tickets before leaving stations, and if they do not get tickets after an opportunity is given them to do so, put them off. The above trains will not carry passengers from stations where there are no tickets on sale unless parties have round trip tickets or passes. Pump and line repairers or bridge inspectors may be carried on any freight trains.

"By order of superintendent.

"T. S. McDOWELL, Train Master."

Of this rule appellee had no notice, though it was posted at the depot at Greenville and at most others, as well as in the cabooses of the freight trains that were permitted to carry passengers.

It is urged that this was a reasonable regulation which the receivers might lawfully make, and that the conductor's act in enforcing it violated no legal right of appellee.

The statute provides that "the point at which the roads of two companies intersect or connect is declared to be a depot for the receipt and delivery of freight, and the *companies must receive, carry, and deliver freight and passengers to and from the same under the same regulations and the same penalties as in other cases.*" Rev. Stats., art. 4238.

This statute has been in force since the act of February 8, 1860.

The statutes further provide: "Every such corporation shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall within a reasonable time previous thereto offer or be offered for transportation *at the place of starting, and the junction of other railroads, and at sidings and stopping places established for receiving and discharging any passengers and freights, and shall take, transport, and discharge such passengers and property at, from, and to such places on the due payment of the tolls, freight, or fare legally authorized therefor.*" Rev. Stats., art. 4226.

"The passenger fare upon all railroads in this State shall be three cents per mile;  *  *  *  provided, however, that when the fare is paid to the conductor the rate shall be four cents per mile, except from stations where no tickets are sold;  *  *  *  provided further, railroads shall be required to keep their ticket offices open half an hour prior to the departure of trains, and upon failure to do so shall not charge more than three cents per mile." Sayles' Civ. Stats. art. 4258b, sec. 9.

The right of a railway company, or of receivers operating a railway, to establish reasonable regulations in reference to the reception and transportation of passengers can not be denied, and under this they may establish and enforce a rule which will deny to passengers the right to be carried on freight trains, and in the absence of a law to the contrary, when passengers are permitted to travel on such trains, may require them to purchase tickets before entering the train if full opportunity be furnished at the station to purchase tickets.

Rules, however, can not be made and enforced which violate the law, without liability to a person injured by their enforcement. Under the statutes quoted it was the duty of appellants to receive passengers at the place where appellee entered the car, and that fact seems to have been recognized by them, for they had been accustomed to receive passengers at that place and were ready to do so on the day appellee entered their

car. The freight train was one on which appellants carried passengers, and on which they made it known they would carry passengers, and their sole excuse for ejecting appellee from their car was that he did not have a ticket.

Articles 4226 and 4238, Revised Statutes, made it the duty of appellants to carry appellee from the place where he entered the car to Pittsburg "on due payment of the tolls, freight, or fare legally authorized therefor."

Article 4258b, section 9, declares that three cents per mile is the fare which may be legally charged, unless the passenger neglects to get a ticket at a station when opportunity required by law is afforded him to do so, when he may be charged four cents per mile.

That article recognizes the fact that there may be stations at which tickets are not on sale, as was the case at the station where appellee entered the car, and provides when this is the case that the fare shall be three cents.

The implication from this statute is that persons without tickets are entitled to carriage from stations at which tickets are not sold on payment of three cents per mile; and this and articles 4226 and 4238, in terms, make this the imperative duty of the carrier.

The law fixes the charge and makes it the duty of the carrier to transport the passenger from such stations on payment of this, whether he has a ticket or not, and no regulation in conflict with the law can be given effect.

Appellee tendered the sum appellants were entitled to receive; this was refused and he ejected from the train, and for this he has cause of action.

The question whether a railway company may lawfully make and enforce a regulation requiring all persons entering their cars, where tickets are sold and opportunity to purchase given, to buy tickets before entering the cars does not arise in this case. It may have been the duty of the conductor, even under the regulation, to carry appellee to the first station at which he could buy a ticket and to give him an opportunity to do so before ejecting him.

It is a matter of no importance that there was a station not very distant from that at which appellee entered the car at which tickets might have been bought, for he was entitled to enter the train at any point made by the law a station for the reception and discharge of passengers, and to be carried therefrom to his destination on compliance or tender of compliance with the terms prescribed by law.

Whether he had notice of the regulation relied on was also an unimportant matter, for as it was in violation of law he was not bound to regard it.

That the train was a freight train was unimportant, for it was a train on which passengers were carried and invited to travel, and appellants

therefore as much bound to transport appellee thereon on payment of fare as would they have been had it been a regular passenger train.

There is no complaint made of the amount of the judgment, and as the court below correctly ruled on the questions considered, its judgment will be affirmed.

*Affirmed.*

Delivered December 9, 1890.