### A. W. Ellis v. Houston East & West Texas Railway Company.

Decided October 17, 1902.

**1.—Carrier of Passengers—Regulations as to Right of Freight Trains—Notice.**

A person who enters a freight train, knowing it to be such, and intending to take passage thereon, is charged with notice that the railroad company is authorized under the law to make reasonable rules and regulations in reference to the carrying of passengers thereon.

**2.—Same—Permit—Requirement Not Waiver.**

Where the company's rules required that a person intending to become a passenger on a freight train should sign a special permit to be obtained from its ticket agent or conductor, the action of the agent in selling plaintiff a ticket that he might ride on a freight train without mentioning the permit did not create an unconditional contract to carry plaintiff without a permit and in violation of an established rule.

**3.—Same—Regulation Held Reasonable.**

A regulation requiring that one who wishes to become a passenger on a freight train shall obtain and sign a permit to be issued by the agent or conductor, is a reasonable one.

**4.—Same—Ejection—Damage Not Shown.**

Where plaintiff boarded a freight train without a permit, as required by the rules, and was carried back to the place where he got on, and put off the train without force, and it was not shown that he demanded a return of the money paid for his ticket, or was prevented from making the desired journey on that day, no damage was shown.

Appeal from the District of Angelina County. Tried below before Hon. Tom C. Davis.

*E. J. Mantooth* and *O'Quinn & Robb,* for appellant.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—Appellant brought this suit to recover damages for his alleged wrongful ejection from one of appellee's trains upon which he alleged he was a passenger and entitled to transportation under a lawful contract therefor made with appellee through its duly authorized agent.    The substantial allegations of plaintiff's petition are as follows:

"That on or about the 26th day of August, 1899, he entered into a contract with defendant, through its local agent at Lufkin, for transportation from the town of Lufkin to the town of Nacogdoches and return; that he represented to said company that he desired transportation over said road on the defendant company's local or mixed train;  *  *  * that before securing transportation plaintiff explained to said agent that he desired to go to Nacogdoches on said local train, and inquired when it was scheduled to depart, and was informed that it would leave about 7 a. m., whereupon plaintiff then called for transportation, and the defendant company then delivered to plaintiff a ticket entitling plaintiff to one first-class passage on said local train to Nacogdoches and return; that said transportation so contracted for and received was unconditional, and at the hour designated for the train to leave, plaintiff took passage thereon and was conveyed two miles from the town of Lufkin, when the conductor called for plaintiff's transportation, which was then delivered to the conductor,  *  *  * who rejected it and ordered plaintiff off of said train.    Plaintiff declined to leave the train, because he had paid $1.20 for his ticket and was therefore entitled to transportation;  *  *  * that the defendant refused to transport plaintiff further, and then and there by force, threats, and fraud, violently and rudely ejected plaintiff from said train against his will and over his protest, in the presence and hearing of other persons, at a place where there was no depot or other means of comfort or means of transportation for the safety of plaintiff in returning from said place where ejected to the town of Lufkin, to plaintiff's damage in the sum of one thousand five hundred dollars.  *  *  * Plaintiff prays that he have judgment for said damages and for costs of suit, and for general and special relief."

Defendant answered by general demurrer and denial, and by special plea, which was as follows:

"That the train upon which plaintiff attempted to take passage was only a freight train, and was not equipped and was not intended for the carrying of passengers under any circumstances, save and except in cases of great emergency and necessity, and then only upon the special condition that the party who might desire to take passage thereon should first procure from the defendant's agent where such person should take passage, or from defendant's conductor in charge of the train, a special permit to ride upon such train; that at the time plaintiff undertook to take passage on defendant's train, and from which he complains of being ejected, this defendant says that it then had adopted and had in effect and in operation a rule that prohibited the carrying of passengers upon

freight trains and the kind of train such as the one plaintiff undertook to take passage on, save and except when passengers were male passengers of the age of 18 years or over, and only such passengers as who might procure such permit from the agent where he took passage, or from the conductor in charge of the train; all of which was then known to the plaintiff or by reasonable prudence on the part of the plaintiff could have been known, and which he in law was charged with the knowledge of; that said rule and regulation had been in force by defendant upon its line of road for a period of several months prior to the date plaintiff attempted to take passage on defendant's train as aforesaid.

"Defendant further alleges that plaintiff, without complying with said rule or regulation as aforesaid, in not procuring such permit from defendant's agent at Lufkin, the place where he took passage on said train, got upon said train without any permit, and that immediately after said train left Lufkin en route to its destination, the defendant's conductor in charge of said train called upon plaintiff for his transportation and for the permit, which plaintiff should have had, to authorize him to ride upon said train. Whereupon plaintiff presented to defendant's said conductor one round trip ticket over defendant's line of road from the town of Lufkin to the town of Nacogdoches; whereupon defendant's conductor informed the plaintiff of the rule and regulation as aforesaid, which required that the plaintiff also have and sign a permit which was intended and which alone would entitle him to be transported upon said train. Whereupon plaintiff stated to defendant's said conductor that he had no permit; thereupon defendant's conductor proposed to plaintiff to furnish him (the plaintiff) with such permit, and advised plaintiff that upon his signing same he would be authorized and could and would transport him to the town of Nacogdoches upon said train. Whereupon the plaintiff declined and refused to sign the permit offered and tendered him by the defendant's said conductor, but demanded that the conductor should carry him to the town of Nacogdoches without his being required to execute or sign such permit; that thereupon he, said conductor, informed plaintiff that he could not under the rules and regulations of the defendant so carry him, and that unless he would sign the permit he, the said conductor, under the rules and regulations then in force by the defendant, would be compelled to eject him from the train, and at once caused the said train to be stopped and run back into the town of Lufkin, within a short distance of where defendant boarded said train, and there plaintiff left said train."

Succinctly stated, the material facts shown by the record are as follows: Appellant lived in Angelina County, and desiring to go to the town of Nacogdoches to transact some business, he went to the town of Lufkin on the evening of the 26th of August, 1899, for the purpose of taking passage to Nacogdoches on appellee's train on the next day. He knew that a freight train over appellee's road left Lufkin for Nacogdoches on the next morning but did not know the schedule time for its departure. He went to appellee's depot on the morning of the 27th and

inquired whether he could get a train going north that morning, and was informed that there would be a train to Nacogdoches at 7 o'clock. He then left the depot, but returned in a short time and purchased from the appellee's agent a ticket entitling him to transportation over appellee's road from Lufkin to Nacogdoches and return. This ticket was in the ordinary form, containing no conditions of any kind, and appellant paid therefor the full rate charged for first class transportation from Lufkin to Nacogdoches. Nothing was said by the agent about a permit to ride on the freight train. Appellant then got aboard appellee's freight train, which left on schedule time, and when the conductor came into the caboose presented his ticket. The conductor took the ticket and asked appellant for his permit. Appellant told him that he did not know what he meant by a permit. The conductor then explained to appellant that the rules of the appellee forbade him to carry passengers on a freight train unless such passenger had a permit. This permit could be issued by the station agent or by the conductor of the train and contained the following conditions and agreements which the passenger was required to sign:

"Houston East & West Texas Railway Company, and Houston & Shreveport Railway Company.

"——, whose signature precedes, has purchased ticket, form ——, number ——, destination ——. The Houston East & West Texas Railway Company agrees to permit ——, who is a holder of transportation over its line, to ride upon said transportation on freight train No. ——, beginning on the —— day of ——, 1900, only when this permit is officially signed in ink and stamped by the agent issuing it, and also signed by the said ——, subject to the following conditions:

"1st. The party to whom this permit is issued, in accepting same, represents and contracts that he is a male person over the age of 18 years.

"2d. It is expressly understood that this permit is not good for passage on any train excepting as above designated, which is a local freight train, unequipped for the hauling of passengers, of which fact the party to whom this permit is issued takes notice; and the said party, in consideration of being allowed to take passage on the said train, agrees to ride in the caboose thereof, which is provided with only two wooden benches and no water closet, and is in charge of no employe whose duty it is to look after the comfort of passengers or assist them in entering or alighting from the train, or to call stations; and further agrees to waive all claims for damages to his person or baggage due or resulting from all shocks or jars which the said train, on account of its character, is liable to sustain, and further agrees not to ride upon the platform or in the cupola of said caboose.

"3d. The party to whom this permit is issued, in accepting the same, agrees without assistance to board the train only when the same is standing still, to look out for and disembark upon arriving at destination; it being understood that the holder of this permit will get on and

off the caboose while it is stopped at a regular station to transact its regular freight business, whether the caboose is at the station depot or platform or not. It is further understood that the train for which this permit is issued will stop only at regular stations to take on and discharge freight, and no special stop will be made for the purpose of taking on or discharging passengers. The holder of this permit hereby takes notice that no provision is made for separate cars or compartment for the different races upon the train, for which this permit is issued.

"4th. As the train for which this permit is issued is not provided with facilities for the carriage of baggage, no baggage will be checked on this permit, or the transportation held by the party to whom this permit is issued, and only light hand baggage in the immediate charge of the holder of this permit will be allowed in the caboose; and the holder of this permit agrees to look after and care for such baggage, and hereby waives all claims for damages on account of its loss or damage.

"5th. The party to whom this permit is issued agrees to sign his name and otherwise satisfactorily identify himself as such whenever called upon so to do by the conductor or agent of the company issuing it.

"6th. It is understood that the railroad company issuing this permit does not hold itself out as a common carrier of passengers upon the train for which this permit is issued, and in consideration of the said railroad company allowing the party to whom this permit is issued to take passage on the said train, the said party agrees to all of the above conditions, and agrees that unless they are fully complied with, this permit shall be void, and upon presentation may be taken up and the holder thereof ejected from the train.

"7th. This permit is not transferable, and no person other than the party to whom it is originally issued can acquire any property in it or title thereto.

"E. B. Cushing,
"General Superintendent.

Local Agent.

Applicant for permit."

The conductor gave one of these permits to appellant and requested him to sign it. This appellant refused to do after having it read over and explained to him by a fellow passenger. In the meantime the train had gotten about two miles from Lufkin. Appellant persisting in his refusal to sign the permit, the train was stopped and backed to Lufkin and appellant ejected therefrom by the conductor. No more force was used in ejecting appellant than was necessary and he sustained no personal injury of any kind. The ticket was returned to appellant by the conductor. The appellee had established a rule forbidding the carrying of passengers upon local freight trains unless such passengers secured a permit as before set out. The rule was published and made effective on

February 25, 1899, and was in force on the 27th of August, 1899, a copy of same being then on the bulletin board at the depot in Lufkin. The officers of appellee's road endeavored to enforce this rule strictly, and there is no evidence in the record that it was ever violated. Appellant did not know of the rule at the time he purchased his ticket. He had general information that appellee's local freight train carried passengers, but knew nothing of the rules under which they were carried and made no inquiries.

The train from which appellant was ejected was a local freight train with no passenger cars attached thereto and not equipped in any manner as a passenger train. There was a daily passenger train over appellee's road from Lufkin to Nacogdoches. None of appellee's agents was authorized to disregard or relax the rules as to the transportation of passengers on freight trains. Upon these facts the court below instructed the jury to find a verdict for the defendant, and upon the return of such verdict judgment was rendered in accordance therewith.

Under appropriate assignments of error appellant complains of this judgment as being contrary to the law and the evidence, in that the undisputed evidence showed that appellant, having been informed by appellee's agent that he could go to Nacogdoches on appellee's train which left Lufkin at 7 o'clock, purchased from said agent a ticket entitling him to transportation from Lufkin to Nacogdoches; that appellant had no notice of any rules requiring him to obtain a permit to ride on said train at the time he purchased the ticket, and that by the sale of said ticket appellee contracted unconditionally to transport appellant from Lufkin to Nacogdoches and return, and no conditions could be subsequently added to said contract.

We do not think the evidence in this case shows that appellee through its agent contracted unconditionally to transport appellant on its freight train. It is true that when the ticket was sold nothing was said about a permit, but appellant knew that the train on which he intended to ride was not a passenger train, and he was charged with notice that appellee was authorized under the law to make any reasonable rule or regulation in regard to the transportation of passengers on its freight trains. The rule which required appellant to obtain and sign the permit presented to him by the conductor was a reasonable rule, and one which the agent of appellee had no authority to abrogate. This rule had been duly published, and so far as the evidence shows had been strictly enforced by appellee. It authorized the permit to be issued either by the agent or the conductor, and the mere failure of the agent at the time the ticket was sold to require appellant to sign the permit or to notify him that he would have to obtain one, can not be considered as a contract on the part of appellee to transport appellant on its freight train without a permit in violation of its established rules. None of the cases cited by the appellant sustain his contention. In the case of Railway v. Moorman, 46 Southwestern Reporter, 662, an agent of the railroad sold Moorman

a ticket for a regular passenger train to a station at which the train did not stop. Moorman had no knowledge of this fact, and the agent at the time the ticket was sold represented to him that the train would stop at the station called for in the ticket. The train did not stop at the station and the conductor demanded fare to the next station, and upon Moorman's refusal to pay same ejected him from the train some five or six miles from the station. The court held that the railroad company, having through its agent contracted with Moorman that the train would stop at said station, was liable to him for its violation of said contract. In Railway v. Mackie, 71 Texas, 491, the appellee had purchased and paid for first class transportation but was only given a second class ticket. He was refused admission into the first class car by the conductor unless he would pay additional fare, which he declined to do. This was held to be a violation of the contract for which the railroad company was liable. The facts in the Holbrook case, 12 Texas Civil Appeals, 475, were that Holbrook contracted with the agent of the railroad for a round trip ticket with a limit of thirty days. After receiving the contract price the agent delivered a ticket with only a ten days limit. As soon as he examined the ticket and discovered that it had only a ten days limit he demanded of the agent that the limit be changed so as to conform to their contract. This was refused. Holbrook then offered the ticket back and demanded a return of his money. This demand was also refused. His wife used the ticket to her destination, but upon her return after the expiration of the ten days limit and before the expiration of the thirty days she was ejected from the train. This was held to be a violation by the railway company of its contract, and damages were allowed. In each of these cases there was a positive, unequivocal contract made by an agent of the company acting within the apparent scope of his authority, with no notice either actual or constructive on the part of the other party of any want of authority in the agent to make the contract.

In the case of Railway v. Jackson, 61 Southwestern Reporter, 440, this court held that a statement made by the agent of the railway at the time Jackson purchased his ticket, in response to his request for a permit, that the conductor of the freight train would issue him a permit, was binding on the company, and the refusal of the conductor to issue the permit and the expulsion of Jackson from the train was held a violation by the railroad company of its contract of carriage made by its agent. The same general principle of the law of agency was applied in this case as in the cases before cited, and the application of that principle is not called for by the facts in the case before us. The most that can be claimed by appellant from the failure of the agent to notify him at the time he purchased the ticket that he must obtain a permit to ride on the freight is that he was thereby induced to believe that nothing more was required to entitle him to transportation on said train than the payment of his fare. No injury is shown to have resulted by reason of his being so misled. After being informed by an employe of the appellee charged

with that duty that he could not ride upon that train without a permit, and such permit being offered him, he refused to accept same. When he refused to comply with the rules of the appellee he was not put off the train at an inconvenient or improper place, but was returned to the place at which he had embarked and without violence forced to leave the train. This was done within a few minutes after he had taken passage on the train. There is nothing in the pleading or evidence indicating that the appellee refused to return him the money paid for the ticket or that he ever made such demand or request, or offered to return the ticket. He seems to have lost all desire to go to Nacogdoches after he failed to secure transportation on the freight train without complying with the rules of the company, and does not claim that he was prevented from reaching Nacogdoches on that day by being refused transportation on the freight train; nor that he suffered any injury by his failure to accomplish his journey. He does not complain of the conditions of the permit which he was requested to sign, his only reason for refusing to accept same being that he did not "have to." We think the evidence wholly fails to show any breach of contract on the part of appellee, and that the act of which appellant complains was necessary in the enforcement of the rules of the appellee in regard to the carriage of passengers upon its freight trains.

The judgment of the court below will be affirmed.

*Affirmed.*