ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v. E. A. ANDERSON.

Decided February 17, 1910.

1.—Carriers of Passengers—Time to Board Train.

It is the duty of a railway to stop its train at a station long enough to afford passengers in general opportunity to board same before starting it. If special circumstances of a passenger require longer time, the company is negligent in failing to afford it only where the circumstances or facts calling for inquiry are known to those operating the train.

**2.—Same—Case Stated—Charge.**

A shipper of fish by express at a small station where there was no express office, having to load his fish on the express car, was injured by the starting of the train while he was attempting to board it to take passage. There was evidence making it a question of fact whether his intention to take passage thereon should have been anticipated by the train men. Held, that it was error to charge that defendant was negligent if the fact that plaintiff was a passenger could have been known to them by the exercise of a high degree of care. This required that they should ascertain his intention by inquiry irrespective of circumstances calling for such inquiry.

Appeal from the District Court of Cherokee County. Tried below before Hon. James I. Perkins.

*E. B. Perkins, Marsh & McIlwaine* and *J. S. McIlwaine,* for appellant.—It was error for the court to charge that if defendant's porter knew or could have known that plaintiff intended to become a passenger, defendant would be liable in the event the train was not held a sufficient length of time to enable plaintiff to embark thereon. International & G. N. R. Co. v. Anderson, 82 Texas, 516; Receivers of I. & G. N. R. Co. v. Armstrong, 4 Texas Civ. App., 146; Missouri, K. & T. Ry. Co. v. Perry, 8 Texas Civ. App., 78.

*Harmon & Shook* and *B. B. Perkins,* for appellee.—The evidence was sufficient to support a finding of negligence. The charge was not on the weight of the evidence, and was not prejudicial to the appellant. Missouri, K. & T. Ry. Co. v. Miller, 15 Texas Civ. App., 428; Texas Midland Ry. Co. v. Ellison, 39 Texas Civ. App., 172; Atchison, T. & S. F. Ry. Co. v. Worley, 25 S. W., 478; Gulf, C. & S. F. Ry. Co. v. Butcher, 83 Texas, 315; St. Louis S. W. Ry. Co. v. Byers, 70 S. W., 559; Missouri, K. & T. Ry. Co. v. Byrd, 40 Texas Civ. App., 315; Lewis v. Houston Electric Co., 39 Texas Civ. App., 625; Galveston, H. & H. Ry. Co. v. Cooper, 70 Texas, 67; Galveston, H. & S. A. Ry. Co. v. Cooper, 2 Texas Civ. App., 45; Johnson v. Texas Central Ry. Co., 42 Texas Civ. App., 604; International & G. N. R. Co. v. Anchonda, 33 Texas Civ. App., 24; Gulf, C. & S. F. Ry. Co. v. Williams, 70 Texas, 159; Gulf, C. & S. F. Ry. Co. v. Powers, 4 Texas Civ. App., 228; Texas Central Ry. Co. v. Johnson, 51 Texas Civ. App., 126; San Antonio & A. P. R. Co. v. Turney, 33 Texas Civ. App., 626; Texas & P. Ry. Co. v. Mayfield, 23 Texas Civ. App., 415; Texas Midland Ry. Co. v. Brown, 58 S. W., 44; St. John v. Gulf, C. & S. F. Ry. Co., 80 S. W., 235; San Antonio Trac. Co. v. Levyson, 52 Texas Civ. App., 122; St. Louis S. W. Ry. Co. v. Humphreys, 25 Texas Civ. App., 401; Texas Midland Ry. Co. v. Terry, 27 Texas Civ. App., 341.

HODGES, ASSOCIATE JUSTICE.—This appeal is from a judgment in favor of the appellee against the appellant for $500 for personal injuries received while the appellee was attempting to board the appellant's train at Forest. The testimony shows that Forest was a small station on appellant's line, and that the appellee and his brother, B. B. Anderson, were engaged in shipping fish from that

place to other points. The express company kept no office at Forest, and parties desiring to ship articles by express were required to deliver them to the agents in the car. On the day the appellee was injured· he and his brother had ten or twelve sacks of fish placed at the depot, at the usual stopping place of the train, ready to be loaded into the express car; part of them destined to Rusk, and part to Jacksonville. When the train stopped they proceeded to load their sacks of fish into the car. Both of them had purchased tickets, and were expecting to go on the same train, one to Jacksonville and the other to Rusk. According to the testimony of the appellee and his brother, just as they were lifting the last sack of fish into the car the train started. B. B. Anderson got into the express car, and the appellee undertook to board the train at the steps of the coach used for white people. The train was in motion as he was climbing up the steps, and gave a jar, or jerk, which does not seem to have been unusual, but was sufficient to cause the injuries of which he complains. The character and extent of his injuries not being involved in this appeal, it is not necessary to notice them further.

The negligence relied on in the petition was, the failure of the operatives to stop the train long enough to permit the appellee to get on board in safety. The testimony makes it reasonably certain that upon its arrival at Forest the train was stopped long enough to permit passengers under ordinary circumstances to get on board, and long enough for the appellee to have gotten on before the train started had he not undertaken to load his fish before attempting to do so. It is equally clear that he was not given sufficient time to get on before the train started after having done this. Among other assignments, there is one challenging the sufficiency of the evidence to show the negligence alleged and relied on for a recovery. It is not claimed that the trainmen did not stop long enough to permit passengers under ordinary conditions to board the train, or to permit the appellee to get on board had he not undertaken to load his freight into the express car before so doing. It is the general duty of railroad companies to stop their passenger trains at stations a length of time reasonably sufficient to allow all parties intending to take passage, and who present themselves at the proper place, to board the cars in safety. It is also the correlative duty of those intending to take passage to present themselves at the proper place for getting on the trains and exercise reasonable expedition in so doing after the train stops.

There can be no · actionable negligence except where there is a failure to perform some legal or contractual duty. The negligence in this instance, if there was any, must rest upon the assumption that under the particular circumstances the appellant's servants in charge of the train owed the appellee the duty to allow him a reasonable time to board the train after having loaded his freight into the express car. The circumstances relied on to establish this duty depends upon the testimony showing the existence and extent of a custom prevailing at that station with reference to shippers of fish. This tends to show that parties shipping fish by express from Forest did their own loading and then accompanied the shipment by taking

passage on the same train; that the trainmen knew of and acquiesced in this proceeding so far as to allow such intended passengers time in which to first do their loading and then get aboard. Appellee and his brother had made several shipments prior to this date, and, according to their testimony, they always went on the same trains with their fish, and boarded the trains after having done the loading. The conductor admitted that there was a general custom such as we have referred to, and further admitted that the Andersons had made previous shipments and had accompanied them on the same trains; but he also stated that it was usual for the man who accompanied the shipment to get into the baggage car and go through it into the passenger coach. It must be borne in mind that the railroad company was in no way responsible for the failure to have an express office at Forest and to provide someone besides the shipper to load the freight into the express car. The express company is itself a common carrier, and is alone responsible for those conditions.

The prevalence of the custom mentioned, together with the length of time it is shown to have existed, disclosed a condition from which the jury might infer that this class of shippers who intended to become passengers were impliedly invited to avail themselves of this indulgence, or at least given to understand that they might first load their freight and that the train would be held for them. If this inference could reasonably be entertained, it then became a question for the jury to say whether under all the circumstances the starting of the train before the appellee could get on was negligence. The court charged the jury as follows: "Now, if you believe and find from the evidence that plaintiff was a passenger and that such fact was within the knowledge of the defendant's conductor or porter, or that such fact would have become known to them or either of them by the exercise of a high degree of care, and you further believe that the defendant failed to hold its train a reasonably sufficient length of time under the circumstances to enable plaintiff to board same in safety, and that defendant was thereby guilty of negligence, as same has been defined to you." While the general duty of holding trains at stations a reasonably sufficient time to allow passengers to get on in safety must be observed without regard to a knowledge on the part of the trainmen as to who may be intending to take passage, we do not think that rule should apply in favor of one who depends upon a special indulgence extended to him or his class, either expressly or by custom. In such cases the passenger should disclose his purpose, or his situation should be such as to reveal it without imposing upon the railway employes the burden of making inquiry to ascertain that purpose. Under the facts of this case this instruction practically charged the conductor and porter with the knowledge that appellee intended to get on that train. For but little effort was required for one or both to ask the appellee concerning his intentions. Both the conductor and porter disclaim any such knowledge, and, if their version is accepted, they had no reason to believe appellee intended to take passage. They testified that while it was the custom for one man to accompany such shipments, it was not usual for two of them to do so; that the one who did so generally

got in the express car, and that on this occasion B. B. Anderson was given time to do this before the train was started. Appellee and his brother testified that the express agent was informed of their intention to both accompany the shipment, and that this was done while the porter was near enough to have heard it. The express agent denied this statement, and the porter denied hearing it. Under one view of the testimony the trainmen were excusable for not waiting for appellee to board the train, while under the other they may not have been.

For the error in giving the charge referred to the judgment is reversed and the cause remanded.

*Reversed and remanded.*