7745

MITCHELL v. AUGUSTA & AIKEN RY. CO.

1. PLEADINGS.—Complaint here construed to allege the car had proceeded thirteen yards beyond the station and not that it had passed the station.

2. CARRIER—PASSENGER—ELECTRIC CARS.—A passenger not at a flag station of an electric road on arrival of car has no right to require the carrier to hold the car even for a short time for him to run up and board the car, which has stopped to take a switch to let another car pass and stood there long enough to let off and take on passengers.

Before SEASE, J., Aiken, April, 1910. Reversed.

Action by J. D. Mitchell against the Augusta and Aiken Railway Company in magistrate court. From judgment

of Circuit Court affirming judgment of Magistrate J. M. Merchant, defendant appeals.

*Messrs. Boykin Wright, Geo. T. Jackson* and *J. B. Salley,* for appellant, cite: *No duty to stop at flag station unless flagged:* 72 S. C. 442; 9 Con. Dig., sec. 1040. *No duty to wait for belated passenger:* 69 S. C. 445; 15 Gray, 24.

*Messrs. Hendersons,* contra.

### STATEMENT OF FACTS.

This is an appeal from an order of the Circuit Court, affirming the judgment rendered by a magistrate, in favor of the plaintiff for one hundred dollars.

The complaint (omitting the formal allegations) is as follows:

"That on Sunday, May 23, 1909, the plaintiff being in the town of Bath, and being desirous of taking passage to Langley, on one of the cars of the defendant company, started with several friends, who likewise desired to take passage to Langley, to the regular and duly advertised station of the defendant company, commonly known as the last stop in Bath (towards Aiken). That shortly before they reached said station (at about 12:45 p. m.) car No. 108, a regular passenger car of the defendant company, reached said station and ran about thirteen yards beyond. That plaintiff and his friends then being but a short distance away, immediately by loud hollering to the conductor in charge of said car, attracted his attention, and also in words notified him of their desire to board said car, and ran quickly towards the car, at the same time crying to the conductor, to wait and to allow them to board the car, but when plaintiff and his friends had actually gotten within a few yards of the car, and close enough to have boarded said car, had said car stopped at the regular station, and had said car waited an instant longer, the conductor

in charge thereof negligently, wilfully and wantonly fail-
ing to stop his car, as is required by law, at said regularly
and duly advertised station, for a time sufficient to receive
passengers, and after stopping said car for an insufficient
time to receive prospective passengers, wilfully and wan-
tonly made a rude and taunting sign and signal, to the plain-
tiff and his friends, who were endeavoring to board the car,
and signalled his car ahead, whereupon it was moved for-
ward, thereby negligently, wilfully and wantonly leaving the
plaintiff and his friends at the station, endeavoring to board
the car, and begging to be taken on it."

There was a demurrer to the complaint, on the ground
that it failed to state facts sufficient to constitute a cause
of action, "in that it appears upon the face thereof, that the
defendant owed no duty to the plaintiff, at the time and
place alleged in the complaint, and that the car of the
defendant, arrived at the alleged station and passed it, before
the plaintiff reached the same." The demurrer was over-
ruled.

The plaintiff testified as follows in his own behalf:

"Mr. Aaron Carroll, Williams Wooten, Oscar Jones and
Oscar Mitchell started with me from my father-in-law's
house, to go to Langley with me. I intended and tried to
take a car of the defendant company, at the station known
as the first stop in Bath, which is a regular station of the
defendant company. There is a switch at that station, and
there is a board nailed upon a trolley pole bearing the word
'station.' This is one of their regular stations. All of
their stations are flag stations, except the two terminals;
cars stop to take on and let off passengers only upon signal
at the flag stations. This switch is about thirty-five yards
long. The pole with the word 'station' on it, is near the
end of the switch towards Bath.

"It was 12:45 that I tried to catch this car. On Sundays
the regular scheduled cars of the company for passengers,
gets to this stop at 12:45. This same car stopped at the

regular Bath stop, before it got to the stop I am talking
about, I saw that.

"The five of us that I have already mentioned, ran to the
car.   The car was at that station waiting for the other
car going the other way to pass.   I was left by the car and
did not get on it, because the conductor signalled the car
ahead, and went off and left us all there.   We were all run-
ning along trying to catch the car, when the conductor
pulled the bell rope and started up the car.   When he did
this, the car was standing where it had been standing, dur-
ing the whole stop, and I and the other men and boys, were
about fifteen steps away, running and trying to catch the
car.   We had already gotten upon the company's property,
and were about three or four steps from the station
pole. * * *

"Just before the conductor pulled the bell rope and started
off, and when I was about twenty steps off and running to
catch the car, I motioned to the conductor to wait for us,
and hollered to him to wait that I was obliged to go.   I
hollered quite loud, plenty loud for a man a hundred yards
off to hear, and there was nothing to keep him from hear-
ing.   I hollered several times before he rang the bell.   Mr.
Carroll and several of the others, also, hollered the same
thing.   I know that the conductor heard us before he rang
the bell, because he was right on the back platform looking
toward us, he had been looking at us during our entire run,
and instead of stopping he laughed.   Since that occurrence,
I have been to the place and run at the same rate of speed
that I was going that day, and I found that it would have
taken me four seconds to have run from where I was when
the conductor started up the car, to the rear end of the car,
in other words, if he had waited four seconds longer I
could have gotten on the car, and so could all the balance
of us.   If the car had been standing at the station board,
I could have gotten on at any rate.   The car never moved
at all during the stop, it did not originally stop at the station

board. The rear end of the car, was always about thirteen yards beyond the station board. * * *."

Cross-examination:

"When the car, reached and ran by the station as above stated, I was about 125 yards off running to catch it. We were all running right along together. * * *

"On Sundays the cars run every half hour, and the car going towards Augusta passed the car I was after, at the switch. The car I was after pulled out first."

On being recalled he stated: "That the car in question stopped at the switch, after he and his friends started to running to catch it. He saw it when it stopped, and it stayed at the switch, only the length of time that it took to run 200 yards, which was about two minutes." The plaintiff introduced no other testimony.

The defendant made a motion for a nonsuit as to the entire cause of action, upon the ground that the evidence failed to show any breach of duty on the part of the defendant, towards the plaintiff, which motion was refused. The defendant then made a motion for a nonsuit, as to the cause of action for punitive damages, which was also refused.

In his order dismissing the defendant's appeal, the Circuit Judge found the facts substantially, as they are stated in the plaintiff's testimony, from which he deduces the conclusion, that the defendant should have waited a reasonable time for the plaintiff to board the car, which it failed to do, and was therefore liable in damages.

## OPINION.

December 16, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY, *after stating the facts.* The first question that will be considered is, whether there was error in overruling the demurrer, on the ground that the car of the defendant arrived at the alleged station and passed it, before the plaintiff reached the same.

Our construction of the complaint is, that it did not intend to allege, that the car had passed the station, but simply that it had proceeded thirteen yards beyond the point, where the word "station" was written. The testimony explanatory of the surroundings, shows that the station was designated by a board nailed on a trolley pole, bearing the word "station."

The next question is raised by the following exception: "In not sustaining defendant's motion for a nonsuit, as to the entire cause of action, and in not holding that the judgment was without any evidence to support it, for the reason that there was no evidence of any breach of duty on the part of the defendant, because the car of the defendant arrived at the alleged station and passed in before the plaintiff reached the same."

Section 2134 of the Code of Laws is as follows: "Every railroad company in this State, shall cause its train of cars for passengers, to entirely stop upon each arrival at a station, advertised by such company as a station, for receiving passengers upon said trains, for a time sufficient to receive and let off passengers."

The Court commenting upon this provision, in *Pickett* v. *Ry.*, 69 S. C. 445, 48 S. E. 446, uses this language: "It will thus be seen, that the statute has made provision for persons desiring to board the train. The railroad company owes no duty to a belated passenger, to stop its train in any other manner, than that required by the statute. *Creech* v. *Ry.*, 66 S. C. 528, 45 S. E. 86. A contrary doctrine would tend to disarrange the schedules of the railroad company, and thus enhance the danger to the traveling public."

In 5 Am. & E. Ency. of Law, 2 ed., 488, it is stated: "The relation of carrier and passenger begins, when one puts himself in the care of the carrier, or directly within its control, with the *bona fide* intention of becoming a passenger and accepted as such by the carrier. Seldom, however, is there any formal act of delivery of the passenger's person,

into the care of the carrier, or of acceptance by the carrier of one, who presents himself for transportation; hence the existence of the relation is commonly to be implied, from the circumstances attendant. The rule is that these circumstances, must be such as will warrant an implication, that one has offered himself to be carried, and that the offer has been accepted by the carrier. In Elliott on Railroads, sec. 1597, it is stated: 'A person may become a passenger before he has entered the train or vehicle of the carrier. We think it safe to say that a person becomes a passenger when, intending to take passage, he enters a place provided for the reception of passengers as a depot, waiting room or the like, at a time when such a place, is open for the reception of persons intending to take passage on the trains of the company.' "

The annotator in *Webster* v. *Ry.*, 24 L. R. A. (Mass.) 521, thus summarizes the result of the decisions: "Considering all the decisions on the subject, which establish quite clearly that a person may sometimes be a passenger, when attempting to take a train, although he has not yet got upon the car, or even procured his ticket, there seems to be no other limitation of the rule so satisfactory as that he must, in order to be regarded as a passenger, present himself in a proper place and in proper manner, because he cannot be presumed to have an invitation to present himself, in any other way."

It appears from the plaintiff's testimony, that the station was what is known as a flag station where the cars do not stop to receive and let off passengers, unless signalled; that the car on that occasion, did not stop to receive or let off passengers, but for the purpose of entering the switch, so as to enable another car to pass in an opposite direction; that it remained on the switch a sufficient time to have enabled persons on the car, to have alighted, or for those who were at the station when it arrived, to have boarded it;

that when the car stopped at the station, the plaintiff was about 125 yards away from it.

Under these circumstances the plaintiff was not entitled to the rights of a passenger and the defendant did not owe to him the duty of waiting, even for a short period of time. As the plaintiff was not at the station when the car arrived, he is not in a position to raise the question, that the defendant did not wait a reasonable time. Therefore, the conclusion of the Circuit Judge is not in accord with the case of *Pickett* v. *Ry.*, 69 S. C. 445, 48 S. E. 466, and the other cases herein mentioned.

Judgment reversed.