### DAVIS v. KIRKLEN. (No. 6946.)

(Court of Civil Appeals of Texas. San Antonio. May 9, 1923. Rehearing Denied June 13, 1923.)

1. Carriers ⚍248—Rules relating to carrying of passenger in baggage cars held reasonable.

Rules requiring a person unable because of sickness to travel in passenger cars and desiring to travel in baggage cars to have a doctor's certificate that he has no contagious and infectious disease, and that travel in baggage cars will not endanger his life, *held* reasonable in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4553a, Rule 51; Pen. Code, art. 801.

2. Carriers ⚍236(2)—Passenger desiring to ride in baggage car because of illness, but failing to present himself within reasonable time previous to departure, held not entitled to damages for being left.

Under Rev. St. §§ 6542, 6554, 6591, relating to carriage of passengers by railroads, the right of any person to demand passage upon a particular train must be tested by the requirement that he present himself for passage "within a reasonable time previous" to the scheduled starting time, and where one who was ill and desired to ride in the baggage car, which arrangement necessitated a doctor's certificate and special arrangements, reached the train only as it was ready to leave, *held*, that no cause of action accrued to him because the train departed without him, notwithstanding his physician was to accompany him and could have furnished the necessary certificate promptly; this fact being not disclosed to the conductor at the time he was requested to wait.

On Motion for Rehearing.

3. Appeal and error ⚍930(1)—Evidence construed most favorably to appellee.

Testimony on appeal must be considered most favorably to appellee.

Appeal from Twenty-Ninth Judicial District Court, Erath County; J. B. Keith, Judge.

Action by G. T. Kirklen against James C. Davis, Federal Agent, operating the Fort Worth & Rio Grande Railroad. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hickman & Morrow, of Dublin, for appellant.

Chandler & Pannill, of Stephenville, for appellee.

SMITH, J. This appeal is from a judgment in favor of G. T. Kirklen against James C. Davis, Federal Agent, operating the Fort Worth & Rio Grande Railroad between Stephenville, in Erath county, and the city of Fort Worth. The cause was tried by jury upon special issues, and the amount of the judgment was $1.500.

The record shows that appellee, Kirklen, who resided in the country, 18 miles from Stephenville, had been ill for some weeks, and his condition became dangerous, rendering an early surgical operation seemingly imperative. With this in view his physician arranged for the operation to be performed in Fort Worth, where the facilities for such purposes were considered more desirable, and on the morning of the day in question, appellee, accompanied by his wife, his physician, Dr. Malloy, his brother-in-law, Buck Brandon, and a neighbor, was carried on a cot in an automobile to Stephenville, where it was intended to take a morning train for Fort Worth. Appellee's condition was such that he could not travel on a passenger car, rendering it necessary that he be carried on a cot in a baggage car, or in a sleeping car. When the party arrived in sight of the railway station, the train they expected to board had arrived in the station, and when they drove up to the station and stopped, was about ready to depart. It did in fact leave without appellee. At that time the railway had in force certain rules, by which it was provided that persons unable to travel in passenger cars, and desiring to travel in baggage cars, must provide themselves with a doctor's certificate, to the effect that they were unable to travel in passenger cars, that they were free of contagious and infectious diseases, and that the mode of travel in baggage cars would not endanger their lives; and must further, in person or by agent, execute a release to the railway of damages for injuries that might result from that mode of transportation. These rules further provide that both the certificate and release must be procured in order to authorize the ticket agent to issue a ticket to the sick person, and that the baggage agent has no authority to permit the prospective passenger to be placed in the baggage car until the release certificate and ticket are procured. Appellee, or at least his doctor, who was in charge of appellee's plans and arrangements, had knowledge of these rules, and that they were being enforced by the carrier. Neither the release nor certificate was procured by or for appellee, but it was shown that when the party arrived at the station, Buck Bran-

---

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

don, appellee's brother-in-law, hurried into the ticket office, and purchased three tickets for the use of appellee, his wife, and his physician. In purchasing the tickets, Brandon did not acquaint the agent with the fact that one of the tickets was for the use of a sick person, and the agent knew nothing of any of the circumstances surrounding the transaction. Failing to get passage on this train, appellee waited for and caught the night train for Fort Worth, using the tickets previously purchased by Brandon, and arriving in Fort Worth at about 6 o'clock the next morning. He traveled as a regular passenger on the sleeping car attached to this train. He was operated upon at about 10 o'clock on the morning of his arrival. It was in evidence that if he had caught the day train, as contemplated, he would have arrived in Fort Worth in time to be operated upon by 5 or 6 o'clock of the same day, or some 18 hours earlier than he was in fact operated upon; that this delay aggravated his condition, and accentuated his suffering. His two doctors differed in their opinion as to whether or not the earlier operation would have saved appellee from the principal, and a concededly grievous disability resulting from his illness. No complaint is made, however, that the judgment is excessive.

Appellant operated two passenger trains daily through Stephenville to Fort Worth. The day train, which carried no sleeping car, was scheduled to arrive at and depart from Stephenville at 10:11 a. m., and the night train, which carried sleeping cars, was due in and out of Stephenville at about 2 a. m. The day train had no "dead time" at Stephenville, which means that it stopped in that station only long enough to unload baggage, express, and mail, and to discharge and take on passengers. On the occasion in question the work of loading and unloading mail, express, and baggage, and of discharging and taking on passengers, had been completed, and the conductor was ready and about to signal the engineer to pull out, when appellee's doctor, immediately after reaching the station, approached and requested the conductor to "give him three minutes to put a sick man on." The conductor saw the patient lying on a cot in his automobile across the platform and 10 or 15 feet from the baggage car, and when the doctor made his request the conductor asked if the patient had a doctor's certificate, to which the doctor replied, "No, I will get the tickets." The conductor again asked, "Have you got a doctor's certificate?" to which the doctor replied, "No, I will get the tickets," whereupon the conductor said, "I haven't got time to fool with them," and upon signal the train moved away, leaving appellee, who at the moment was being moved from his automobile preparatory to being placed upon a cot which his attendants had set up for him on the platform beside the automobile. The conductor was not apprised that appellee was accompanied by his physician, or that the person requesting that the train be held was himself a physician, or that he could or would sign the required certificate. So far as the record shows to the contrary, the conductor could assume that appellee was there without a physician, and that in order to get a certificate it would be necessary for appellee's attendants to go into the town of Stephenville, locate a physician, and procure an examination of appellee, and from such examination ascertain if the required certificate could properly issue, and, if so, procure it. From the foregoing arises the controlling question: Did the carrier under the circumstances owe to appellee the duty of holding the train at this station until he procured and tendered the credentials entitling him to passage on that train?

[1] Appellee does not appear to question the reasonableness of the rule promulgated and enforced by appellant, requiring a baggage car passenger to procure the certificate and release mentioned, and it seems to be well settled that the carrier may make and enforce such reasonable regulations as it may deem necessary to conduct its business in such manner as will protect its interest and the best interests of the public. The regulations here invoked appear to be reasonable, no objection is urged to them, appellee was well aware of them, and the requirement of a doctor's certificate was a precaution probably made necessary by the statutes, prohibiting the carrier, as such, and the conductor, individually, from permitting the transportation on trains of persons having contagious or infectious diseases. Rule 51, art. 4553a, Vernon's Sayles' Ann. Civ. St. 1914; article 801, P. C. This cause will be discussed, then, upon the theory that the rules mentioned were reasonable and enforceable. 4 Elliott, R. R. § 1576; 10 C. J., pp. 650, 730; 2 Hutch. Carr. §§ 966, 992, 1105; Ry. v. Moore, 49 Tex. 31; 30 Am. Rep. 98; Eddy v. Rider, 79 Tex. 53, 15 S. W. 113; Ry. v. Stell, 28 Tex. Civ. App. 280, 67 S. W. 537; Ellis v. Ry., 30 Tex. Civ. App. 172, 70 S. W. 115.

It is provided in article 6552, R. S., that—

Every railroad corporation "shall start and run their cars for the transportation of passengers * * * at regular times to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all such passengers * * * as shall, within a reasonable time previous thereto, offer or be offered for transportation at * * * stopping places established for receiving and discharging way passengers * * * and shall take, transport and discharge such passengers * * * from, and to such places, on the due payment of the * * * fare legally authorized therefor. * * *"

It is provided in article 6554:

"In case of the refusal by such corporation or their agents to so take and transport any pas-

senger * * * at the regular appointed time, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit. * * *"

. And in article 6591 it is provided that—

"Every railroad company doing business in this state shall keep its depots or passenger houses in this state lighted and warmed, and open to the ingress and egress of all passengers who are entitled to go therein, for a time not less than one hour before the arrival and after the departure of all trains carrying passengers on such railroad. * * *"

Summarized, the statutes quoted provide: (1) That the carrier shall open and keep open its passenger depots for at least one hour before the arrival and departure of each passenger train; (2) shall start its cars from its stations at regular times to be fixed by published schedules, and (3) shall accept and carry all passengers "who shall, within a reasonable time previous" to the schedule starting time, offer themselves for transportation. The obvious purpose of these statutory provisions was to require, and at the same time enable, the carrier to publish and maintain regular schedules for the operation of its passenger trains. These statutes were enacted for the benefit and protection of the public, and not of the carriers; for the whole public, without discrimination against, or special privilege or indulgence in favor of, any individual member of the public. Being quasi public corporations, carriers by rail are granted extraordinary powers with the express view of rendering adequate and impartial service to the public. Hutch. Carr. §§ 1105, 1111; Ry. v. Strickland (Tex. Civ. App.) 208 S. W. 410; Ry. v. Anderson (Tex. Civ. App.) 125 S. W. 628; Mitchell v. Ry., 87 S. C. 375, 69 S. E. 664, 31 L. R. A. (N. S.) 443, and note; Paulitsch v. Ry., 102 N. Y. 280, 6 N. E. 577.

[2] We take it that the right of any person to demand passage upon any particular train must be tested by the requirement that he present himself for passage within a reasonable time previous to the scheduled time for the departure of the train. There is nothing in the law, or in reason, which requires a common carrier of all persons to disrupt its schedule, or delay its trains beyond the scheduled stop, in order to accommodate one person, or any class of persons. A train starting upon, or later than, its schedule time, is not required to stop in order to take on a belated passenger. Nor will a train, ready and required by its schedule to start, delay its departure to take on a belated passenger. To stop in one case, or delay in the other, would be to abandon the schedule, violate both the letter and spirit of the statute, and discriminate in favor of the improvident against those who had diligently taken timely passage. The carrier's duty is to the general public, and it will not be permitted to turn from that duty in order to extend a special indulgence to an individual or class.

It does not occur to us that the foregoing rule should be relaxed in cases where the delay will be very slight, or for only one minute, or two, or any number of minutes, nor in cases which may appeal to the humane or kindly sensibilities. Because, if once relaxed, the rule would become flexible and lose its force, and the carrier's duty to the public would thus become a matter of opinion, varying according to the prejudice, bias, caprice, or judgment of individuals determining it in given cases. Its enforcement would as a practical matter depend upon the discretion of train conductors, which is a result not contemplated by the law.

Appellee was aware of the published schedule maintained by the carrier, and of the rules enforced by it. He knew when the train was scheduled to depart, and that in order to get passage on that train he must equip himself with the necessary credentials, and present himself for that purpose, "within a reasonable time previous" to the scheduled time of departure of the train. He did not do so. He desired passage upon a car in which he knew passengers were not usually carried, to entitle him to which privilege he knew it was necessary to procure a release and doctor's certificate. He did not procure these, could not and did not tender them before the train left at the scheduled period. Although the train reached his station five minutes after its scheduled time of arrival, he was not at the station when it arrived, nor for several minutes thereafter, when it was ready to depart as scheduled. He told the conductor he had no doctor's certificate, and although he had his physician with him, he did not advise the carrier's agents or conductor of the fact, or that he could promptly procure the certificate, or when, if at all, he could procure it. Under those conditions, and in view of the rule we have discussed, we are of the opinion that the carrier in this instance was under no duty to delay its train as a special indulgence to appellee who was not ready to take passage thereon at the time scheduled for the train's departure. The case is one that very strongly appeals to the sympathy, but this fact does not warrant the abrogation of a well-established rule of law.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

In his motion for rehearing appellee complains of the finding that in the conversation between Dr. Malloy and the train conductor, when the former approached and requested the latter to "give him three minutes to put a sick man on," the conductor asked Dr. Malloy if the patient had a doctor's certificate, to which the doctor replied, "No, I will get the tickets," and that this colloquy was then repeated.

[3] We have concluded that when the testimony is construed most strongly in favor of appellee, as it should be on appeal, and when the testimony in favor of appellee is given full verity, as also must be done, we are perhaps going too far in saying that the foregoing colloquy occurred. So, we will eliminate that finding from the case. The effect of this elimination, however, is negligible, and does not affect the disposition of the appeal. .The undisputed record still shows, conclusively, that the conductor was not apprised of the fact that appellee was accompanied by a physician, or that a doctor's certificate could or would be promptly furnished. He knew none of these facts, and had no reason to surmise their existence, and under the circumstances would naturally assume that if . they existed appellee or his attendants would have been quick and certain to apprise him thereof, and offer to promptly furnish the certificate. Appellee was seeking a special indulgence of . the carrier, and it was his duty and that of his agents to apprise the carrier's agents of his true situation and purpose, and if he was in a position to promptly furnish the required certificate and release, or to prepare and furnish them after boarding the train, he should have so apprised the conductor. The burden was not on the conductor to inquire into the existence of these facts, which he had no reason to anticipate, and which rested peculiarly within the knowledge of appellee and his agents. Ry. v. Anderson (Tex. Civ. App.) 125 S. W. 628. As was said by Justice Hodges in the case cited:

"While the general duty of holding trains at stations a reasonably sufficient time to allow passengers to get on in safety must be observed without regard to a knowledge on the part of the trainmen as to who may be intending to take passage, we do not think that rule should apply in favor of one who depends upon a special indulgence extended to him or his class, either expressly or by custom. In such cases the passenger should disclose his purpose, or his situation should be such as to reveal it without imposing upon the railway employés the burden of making inquiry to ascertain that purpose."

The motion for rehearing is overruled.