### B. F. ALLEN v. TEXAS & PACIFIC RAILWAY COMPANY.

No. 1682. Decided April 24, 1907.

**1.—Federal Court—Constitutional Law—Effect of Decision.**

The opinion of the Supreme Court of the United States upon a case in-volving the constitutionality of a Texas statute as an attempt to regulate in-terstate commerce is binding upon the state courts only as to the question in-volved; its intimations as to the · effect of other constitutional provisions upon such statute as a regulation of commerce within the State are not con-clusive (Houston & T. C. R. R. Co. v. Mayes, 201 U. S., 321, limited. (Pp. 526, 527.)

**2.—Railway—Furnishing Cars—Penalty.**

The penalty imposed upon railways by Revised Statutes, arts. 4497–1502, as amended in 1899, for failure to furnish cars, on demand made in accordance with such statute, for a shipment of cattle between points within the State, is recoverable, though such statute · be held unconstitutional as applied to interstate shipments. (Pp. 527, 528.)

**3.—Same—Due Process of Law—Constitution.**

A law is not to be held void because its application might, in some cases, result in depriving one of his property without due process of law.; the courts will refuse to enforce it only in particular case in which it would have such effect. (Pp. 528–530.)

**4.—Statutory Construction—Expression and Exclusion.**

The exception, by the statute imposing a penalty for failure of a railway company to furnish a shipper cars upon demand (Revised Statutes, articles 4497–4502), of "cases of strikes or other public calamities") does not necessarily exclude other defenses based on constitutional grounds, such as the claim that the law effected a taking of defendant's property without due process, (owing to impossibility of compliance when its cars had, without its fault, got beyond its control, being in the possession of other roads which failed to return them. ) (Pp. 529, 530.)

**5.—Same—Pleading.**

Pleading by a defendant railway held insufficient to show that its inability to furnish cars to a shipper on demand was the result of circumstances beyond its control. (P. 530.)

**6.—Railway—Agent—Authority.**

Local agents are treated by the statute as authorized to receive demands for cars, and evidence that they were not authorized to contract for or control the furnishing them was inadmissible as a defense to an action for failure to furnish such cars on demand. (P. 530.)

Error to the Court of Civil Appeals for the Second District, in an ap-peal from Nolan County.

Allen sued the railway company and had judgment. Defendant ap-pealed, and the case was reversed, denying his right to recover penalties,

but remanding for a trial on other issues. Allen then obtained writ of error.

*Ragland & Crane,* for plaintiff in error.—The statute is constitutional as applied to intrastate shipments, and enforceable in such cases, though unconstitutional in interstate commerce. Rev. Stats., arts. 4497, 4500, as amended by Acts of 1899, p. 67; Houston, E. & W. T. Ry. Co. v. Campbell, 91 Texas, 551; Houston & T. C. Ry. Co. v. Mayes, 11 Texas Ct. Rep., 69; Gulf, C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 572, 16 Am. St. Rep., 926; Schloss v. Atchison, T. & S. F. Ry. Co., 85 Texas, 601; Keiter v. Wilmington & W. Ry. Co., 86 N. C., 346; Hutcheson on Carriers, secs. 292, 293.

*J. M. Wagstaff* and *T. P. Davidson,* for defendant in error.—The court erred in sustaining exceptions to defendant's pleadings alleging scarcity of cars. Davis v. Texas & P. Ry. Co., 91 Texas, 505.

WILLIAMS, ASSOCIATE JUSTICE.—A judgment of the District Court in favor of plaintiff in error, against defendant in error, for penalties and damages for the failure of defendant in error to furnish, as required by Revised Statutes, articles 4497-4502, as amended in 1899, six cars demanded by plaintiff for a shipment of cattle from Eskota to Fort Worth, Texas, was reversed by the Court of Civil Appeals, and a judgment was rendered by that court that plaintiff recover nothing as for penalties claimed, and that his claim for damages be remanded to the District Court for further trial upon the allegation of negligence, unaffected by the statutory provisions referred to. This ruling was induced by the opinion of the Supreme Court of the United States in the case of Houston & Texas Central Railroad Co. v. Mayes, 201 U. S., 321, which held that the statute relied on by plaintiff was invalid in its application to interstate commerce, as imposing a burden upon it. The Court of Civil Appeals thought that, while the decision referred to expressly decided only the federal question stated, the reasoning of the opinion condemned the statute as a regulation of the intrastate business of the railroads as well.

After a very mature consideration of the subject we are unable to agree that the decision of the Supreme Court upon the federal question should be regarded as controlling this case. That decision was carefully limited to the question before the court, which, as stated, was, whether or not the statute was an interference with the exclusive power of Congress to regulate interstate commerce, the court saying: "As the power to build and operate railways, and to acquire land by condemnation, usually rests upon state authority, the Legislatures may annex such conditions as they please with regard to intrastate transportation, and such other rules regarding interstate commerce as are not inconsistent with the general right of such commerce to be free and unobstructed." While this general statement as to the power of the Legislature, with reference to intrastate transportation, may need some qualification, in view of other provisions of the State and Federal Constitutions, which the court was not then discussing, and while it is true that the tendency of some of the observations of the court upon the statute would seem to

be to bring them into collision with other constitutional safeguards than that with reference to the regulation of interstate commerce, the authority of the decision goes no farther than to establish the invalidity of those provisions insofar as they are directed at interstate transportation. We are not bound by the construction given to the statute, nor by anything in the opinion bearing upon other questions than that decided, and must determine such other questions for ourselves.

We are bound to follow the conclusion that the statute is void insofar as it applies to interstate commerce. Conceding that the statute was intended to apply to that subject as well as to intrastate transportation, it does not follow that it can not operate upon the latter. Whether or not it can still have such restricted application depends upon the well-known principles by which courts determine the effect of statutes partly, but not wholly, affected by constitutional infirmity. Assuming, for the moment, that the statute would be valid if its operation had been expressly confined to transportation entirely within the State, the question is, whether or not it may be allowed to so operate notwithstanding the attempt to make it embrace interstate transportation also, and the defeat of such attempt. The case, upon the assumption stated, is one of a statute applying to more than one subject, one of which it can, and another of which it can not, be made to govern. The principle applicable is stated as follows by Judge Cooley, in a passage which has been followed by this court as the true guide when the question assumes this shape:

"A legislative act may be entirely valid as to some classes of cases, and clearly void as to others. A general law for the punishment of offenses, which should endeavor to reach, by its retroactive operation, acts before committed, as well as to prescribe a rule of conduct for the citizen in the future, would be void so far as it was retrospective; but such invalidity would not affect the operation of the law in regard to the cases which were within the legislative control. A law might be void as violating the obligation of existing contracts, but valid as to all contracts which should be entered into subsequent to its passage, and which therefore would have no legal force except such as the law itself would allow. In any such case the unconstitutional law must operate as far as it can, and it will not be held invalid on the objection of a party whose interests are not affected by it in a manner which the Constitution forbids. If there are any exceptions to this rule, they must be of cases only where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the Legislature will be defeated if it shall be held valid as to some cases and void as to others." Cooley's Const. Lim., pp. 215, 216; State v. Missouri, K. & T. Ry. Co., 17 Texas Ct. Rep., 855.)

The main purpose the Legislature had in view in passing this statute was to enforce the duty of railroad companies promptly to furnish cars in which all property to be shipped over their lines might be started on its course, whether destined to points within or to points without the state.

The criticism of the act, that it allows no defense for the failures to meet demands made for cars arising out of conditions beyond the control of carriers, except strikes and public calamities, seems equally

strong, whether it be considered as applying to the one or the other class of business. But we are at liberty to consider the question as to its validity in but one of its applications, all question as to the other having been conclusively settled; and, believing that, when properly construed and applied, it may yet legitimately control the furnishing of cars for intrastate shipments, we are unwilling to say that the Legislature did not intend that it should operate so far, whether it could have the full effect intended or not.

The contention is now made against the validity of the statute that the enforcement of its provisions will have the effect of depriving the railroad companies of their property without due process of law, because it admits no defense for failure to meet the demands except such as results from strikes or public calamities. If this effect were given to it, cases might be supposed in which it would violate both our own bill of rights and the Fourteenth Amendment to the Constitution of the United States. The requirement upon which the question arises, in substance, is that the cars demanded shall be furnished at the designated points, if ten or less, in three days; if between ten and fifty, in six days, and, if fifty or more, in ten days from the receipt of the demand. The only reference to any excuse or reason which may be set up for noncompliance is in the proviso to the last section of the act, "that the provisions of this law shall not apply in cases of strikes or other public calamities."

Since 1853 it has been the statute law of this State that railroad companies "shall furnish sufficient accommodations for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, offer or be offered for transportation at the places of starting, and the junctions of other railroads, and at sidings and stopping places established for receiving and discharging way passengers and freight." (Pasch. Dig., art. 4893; Rev. Stats., art. 4494.) With this law in force all of the existing roads in Texas have been built.

The statute now in question was passed in 1887 and amended in 1899, and made it the duty of railroad companies to furnish cars at such shipping points as those just mentioned (Rev. Stats., art. 4498; Houston, E. & W. T. Ry. Co. v. Campbell, 91 Texas, 558), and enforced this duty by prescribing penalties, besides giving an action for damages caused by nonperformance. Considering the previous legislation and the duty imposed upon the companies of having adequate facilities, such as cars, etc., for the carrying on of the business which they have undertaken for the public, can it be said that this statute, upon its face, contains such provisions as will result in the taking of their property without due process of law? It is not denied that the Legislature may make it their duty to have and furnish enough cars to meet all of the demands which they reasonably may anticipate, but it is said that, under various unavoidable and unforeseen conditions, they may, without fault on their part, be unable, within the time allowed, to meet a particular demand, although supplied with all of the facilities required by law. This might, sometimes, but would not always, nor generally, be the case, and we can not see that the fact that exceptional cases might arise furnishes just reason for saying that the law is unconstitutional, as requiring or authorizing the taking of property without due process. Unless it appears otherwise, the law must be construed as if enacted in subordination to

constitutional limitations, such as that invoked, and as intending that the protection secured by that rule shall be given in all cases in which it applies. The due process provision is a rule to be observed by the courts in all of their proceedings, and they can not allow the violation of it in proceedings under any statute. (Chicago, Burlington & Quincy Ry. Co. v. Chicago, 166 U. S., 234, 235.) Hence, it may become a question in a particular case whether or not the enforcement of such a penalty would contravene this fundamental rule, and, if it be found that it would, the statute can not, and is not intended to, control that case. But this does not require that the law itself be held void in its general application. This is true, because such is not the necessary nor the general effect of its enforcement. It can not be known in advance that any railroad company, equipped as its duty requires, will find itself unable to furnish cars in the time allowed by this statute; nor can it be known that some company may not be unable to do so in that, or any other time which the Legislature, having any regard for the rights of shippers, might have fixed. And as the Constitution, by its own force, protects against the taking of property without due process, it was not essential to the validity of a statute imposing the general duty, to be enforced only in courts which must also enforce the constitutional rule, that the Legislature should have defined in advance the conditions under which such rule shall give protection. It is enough if the statute does not, by its own provisions, contravene the Constitution in such way that, by considering the two together, the court can see the conflict. It may be true that, if the statute by its express provisions, or by necessary implication, attempted to deprive the defendant of the right to make defenses necessary to its protection, in its constitutional rights, it could not be sustained, since the courts must enforce statutes as they are made or not at all, and can not substitute a rule of their own making. And this consideration gives point to the contention that the proviso, that "the provisions of this law shall not apply in cases of strikes or other public calamities," was intended as an express exclusion of any other defense but those based upon it. The language does not necessarily convey such a meaning. The provision is very sweeping and quite vague. The application of all of the provisions of the statute is excluded in the cases specified, which naturally means that when a strike is pending, or when the railroad companies and the public are suffering from the effects of a calamity, the procedure of the statute can not be invoked at all, and not merely that the carriers may show that they were prevented by such causes from meeting statutory demands; and, thus viewed, there would not be an express regulation of the defenses to be made in cases where such procedure may be employed. But we shall not attempt to determine the exact extent and meaning of the proviso, for neither construction would, in our opinion, justify us in assuming that the Legislature meant to exclude defenses which the fundamental law entitles the parties to make. The idea that express provision for some defenses is an exclusion of all others should not, in such a connection, be allowed to prevail over the presumption that the Legislature acted with proper regard for the Constitution. (Cooley Const. Lim., 220, 221.) In a general way, this method of treating the question is supported by the fol-

lowing authorities: Whitehead v. Wilmington & Weldon Ry. Co., 87 N. C., 255; Baker v. Braman, 6 Hill, 47; Chicago, Burlington & Quincy Ry. Co. v. Chicago, 166 U. S., 233-235.

We conclude that penalties and damages are recoverable under the statute, when it has been complied with by the shipper, whenever the carrier fails to furnish the cars as demanded, unless the carrier can show that its failure was due to no omission of duty on its part. But we hold that, when it sets up facts showing that, it is entitled to a hearing, which shall be full and effectual, and that the statute is not intended to deny this right. It merely imposes a duty which ordinarily can be performed, as is rendered sufficiently apparent by records of cases coming before the Appellate Courts, in which no carrier has yet, so far as we can recall, shown that compliance with it was, without fault on its part, rendered impracticable.

In this case the answer of the defendant did nôt allege facts showing that it had performed the duty laid upon it by law of providing a sufficient number of cars to meet the ordinary needs of its business which it could reasonably anticipate, nor that the scarcity of cars and the existing demands for them were the result of circumstances beyond its power reasonably to control or provide against. It was therefore subject to the demurrer which was sustained. The opinion of Mr. Justice Stephens, in the case of Texas & Pacific Ry. Co. v. Barrow, 94 S. W. Rep., 177, sufficiently discusses the question.

The evidence offered to show the facts alleged in the answer was, of course, properly excluded, there being no pleading to warrant its admission.

The evidence offered to show the lack of authority in defendant's station agent at Eskota to contract for or control the furnishing of cars was also properly excluded. No question of contracting was involved in the case, and the statute, as amended in 1899, in effect, treats such agents as authorized to receive such demands for cars. (Houston, E. & W. T. Ry. Co. v. Campbell, supra.)

This disposes of all of the grounds assigned in the Court of Civil Appeals for the reversal of the judgment of the District Court, and, as none of them are well taken, it follows that that judgment should have been affirmed.

Judgment of Court of Civil Appeals reversed; judgment of District Court affirmed.