FT. WORTH & D. C. RY. CO. v. STRICK-
LAND. (No. 1442.)

(Court of Civil Appeals of Texas. Amarillo.
Jan. 8, 1919. Rehearing Denied
Feb. 5, 1919.)

1. CARRIERS ⟨⟩227(3) — LIVE POULTRY — DE-
LAY IN FURNISHING CAR—ISSUES.

Pleadings *held* to raise the issue of whether
railroad furnished car for shipment of live
poultry within a reasonable time after shipper's
application therefor, in compliance with its duty
under Interstate Commerce Act (U. S. Comp.
St. § 8563, subd. 2).

2. CARRIERS ⟨⟩47(1) — POULTRY — FURNISH-
ING CAR—AUTHORITY OF AGENT.

In action against railroad for failure to fur-
nish car for shipment within a reasonable
time after shipper's application in violation of
its duty under Interstate Commerce Act (U.
S. Comp. St. § 8563, subd. 2), *held*, that the
railroad's agent at one station had authority to
receive application for car for shipment at an-
other station.

3. CARRIERS ⟨⟩207(1) — POULTRY—APPLICA-
TION FOR CAR—WAIVER OF IRREGULARITIES.

An irregularity in shipper's application for
car for shipment of poultry was waived by car-
rier, where trainmaster received order, acted
on it, and finally furnished the car on the appli-
cation.

4. CARRIERS ⟨⟩209 — POULTRY — DUTY OF
RAILROAD—FURNISHING OF CARS.

Under Interstate Commerce Act (U. S.
Comp. St. § 8563, subd. 2) and state laws,
where there was a demand along railroad for
cars for shipment of live poultry, it was rail-
road's duty to furnish cars suitable for such
purpose.

5. CARRIERS ⟨⟩42—ACCEPTANCE OF PERISHA-
BLE GOODS—DUTY OF RAILROAD.

Railroad accepting perishable goods requir-
ing cars and equipment of a peculiar kind, un-
dertakes, in the absence of some fact changing
the nature of the undertaking, that it has such
cars and equipment, and that it will properly
use them in the transportation of such prop-
erty.

6. CARRIERS ⟨⟩44—ACCEPTANCE OF PERISHA-
BLE GOODS — FAILURE TO FURNISH CARS —
DEFENSES.

Where railroad accepts perishable goods
with express or implied notice of the perishable
character thereof, it is precluded, upon its fail-
ure to furnish cars, from asserting that it did
not have the means or facilities for performing
the duty it took upon itself; it being no de-
fense that carrier did not own or control such
cars or equipment.

7. CARRIERS ⟨⟩40 — FURNISHING OF CARS —
REASONABLE NOTICE BY SHIPPER.

Generally, when cars are required by ship-
per, reasonable notice should be given by him,
and a reasonable time allowed the company in
which to procure cars.

8. CARRIERS ⟨⟩45—FAILURE TO FURNISH CAR
—ACTION FOR DAMAGES—BURDEN OF PROOF.

As railroad is required to furnish cars for
goods accepted, and as facts excusing its failure
to furnish cars when proper request is made
and freight is offered are peculiarly within rail-
road's knowledge, the burden is upon railroad
to establish facts constituting an excuse for
failure to furnish cars.

9. CARRIERS ⟨⟩40—TRANSPORTATION FACIL-
ITIES — DUTY OF RAILROAD—"TRANSPORTA-
TION."

Railroad's duty to "furnish transportation
upon reasonable request," under Interstate
Commerce Act (U. S. Comp. St. § 8563, subd.
2), requires it to furnish suitable cars as a
part of the transportation.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Trans-
portation.]

10. CARRIERS ⟨⟩45 — FAILURE TO FURNISH
TRANSPORTATION — ACTION FOR DAMAGES —
BURDEN OF PROOF.

In action against railroad, based on rail-
road's violation of its duty to furnish transpor-
tation, under Interstate Commerce Act (U. S.
Comp. St. § 8563, subd. 2), the burden is on
railroad to allege and prove a legal excuse.

11. CARRIERS ⟨⟩39—DUTY AS TO TRANSPOR-
TATION—QUASI PUBLIC CORPORATIONS.

Railroads are quasi public corporations, and
acquire thereby an exclusive privilege to carry
on their business over their highways, which
powers are granted with the express view of
their rendering adequate and impartial service
to the public.

12. CARRIERS ⟨⟩206 — LIVE POULTRY—FAIL-
URE TO FURNISH CARS—DEFENSE.

Where application was made for car for
shipment of live poultry, railroad's failure to
furnish car within reasonable time, as required
by Interstate Commerce Act (U. S. Comp. St.
§ 8563, subd. 2), was not excused by fact that
it relied upon another company to furnish car,
where such car was the one commonly used by
the railroad for the shipment of poultry.

13. TRIAL ⟨⟩260(5) — INSTRUCTIONS COVERED
BY OTHERS GIVEN.

In action for failure to furnish car, refusal
of requested instruction permitting jury to take
conditions surrounding transaction into consid-
eration on question of whether railroad exer-
cised reasonable diligence in furnishing car was
not error, where court in its main charge defin-
ed reasonable diligence correctly, and told jury
to consider railroad's situation and its ability to
furnish particular car requested.

14. APPEAL AND ERROR ⟨⟩742(3) — ASSIGN-
MENTS OF ERROR.

The proposition that pleadings did not raise
certain issue was not relevant under assign-
ment of error that court erred in rendering
judgment on findings of the jury on such issue.

15. CARRIERS ⟨⟩230(1)—FAILURE TO FURNISH
CAR WITHIN REASONABLE TIME—LIVE POUL-
TRY—JURY QUESTION.

In action against railroad for failure to fur-
nish car for shipment of live poultry within

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

reasonable time after application therefor, as required by Interstate Commerce Act (U. S. Comp. St. § 8563, subd. 2), where there was evidence of shipper's application for such car, the question of whether railroad furnished car within a reasonable time was for the jury.

## 16. EVIDENCE 131—FAILURE TO FURNISH CAR—SIMILARITY OF CONDITIONS.

In action against railroad for failure to furnish car within a reasonable time after application therefor, as required by Interstate Commerce Act (U. S. Comp. St. § 8563, subd. 2), evidence that plaintiff applied to another railroad for a similar car which was furnished in less time than that in which defendant furnished car was inadmissible, where it was not shown that conditions with reference to the two orders were the same.

## 17. APPEAL AND ERROR 1050(1)—REVIEW—HARMLESS ERROR.

In action against railroad for failure to furnish car, as required by Interstate Commerce Act (U. S. Comp. St. § 8563, subd. 2), the admission of evidence that shipper applied to another railroad for similar car, and was furnished car in less time, was harmless, where there was other evidence of such facts admitted without objection.

## 18. EVIDENCE 129(6)—DELAY IN FURNISHING OF CAR—ACTION FOR DAMAGES.

In action against railroad for failure to furnish car within a reasonable time after application therefor, as required by Interstate Commerce Act (U. S. Comp. St. § 8563, subd. 2), evidence that defendant railroad furnished another shipper a similar car on a subsequent application before car was furnished plaintiff was admissible in evidence of unreasonable delay.

## 19. CARRIERS 228(5)—DELAY IN FURNISHING OF CAR — SUFFICIENCY OF EVIDENCE — UNREASONABLE DELAY.

In action against railroad for failure to deliver car for shipment of live poultry within a reasonable time after application, as required by Interstate Commerce Act (U. S. Comp. St. § 8563, subd. 2), evidence *held* to support verdict for plaintiff.

Appeal from Wilbarger County Court; E. L. McHugh, Judge.

Action by John L. Strickland against the Ft. Worth & Denver City Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Bonner & Storey, of Vernon, and Thompson, Barwise, Wharton & Hiner, of Ft. Worth, for appellant.

Berry, Stokes & Morgan, of Vernon, for appellee.

HUFF, C. J.   Strickland, appellee, sued the appellant railway company for damages for failure to furnish a car in which to ship poultry, which car was to be placed on the road switch at Chillicothe, Tex., and from that station to be shipped to New York. It is alleged

the application was in writing and made December 28, 1916; that the car was to be furnished January 3, 1917, but that it was not furnished until January 21, 1917. There was a delay of 18 days and consequent damages for extra feed, $289.90, extra labor, an extra man to care for the poultry, $24, loss and shrinkage, $101.91, which was caused by the delay. The appellant answered that the appellee made application to its local agent at Vernon, Tex., December 28, 1916, for a car in which to load and ship poultry from Vernon, Tex., to New York, and desired the car set at Chillicothe for loading January 3, 1917; that the particular car desired by appellee was not owned by appellant, but that such car was of peculiar construction and was furnished appellant and other railway companies, when they applied for them, by the Live Poultry Transit Company, of Chicago, Ill., and this fact was well known to appellee when he applied for the car; that it did take immediate steps to secure the car and was unable to secure it until about the 20th of January, 1917; that it did all it could and that it could not furnish it at an earlier date and used all diligence in its power, but on account of the limited number of such cars and the demand on the company it was unable to furnish the car sooner; that it did not agree to get the car on any day certain, and was only required to use due diligence to furnish the same; that it being for an interstate shipment it was not required to do more than it did to secure the same; that it used all the diligence to secure the car within a reasonable time and did secure the car within a reasonable time.

By a first supplemental petition appellee replied, denying due diligence on the part of appellant, alleging that from the time of the application with the agent to the 3d of January was a reasonable time within which to furnish the car; that it did not use reasonable diligence to furnish the car January 3d, or at any subsequent date; that said date was a reasonable time, and appellant failed thereafter to furnish the car within a reasonable time; that the failure of appellant to use diligence to furnish the car within a reasonable time after December 28, 1916, the date of the application, occasioned the damages set out. By a supplemental answer the appellant alleged that it was not required to furnish the car on the date requested because the application was for a Live Poultry Transit Company car, to be loaded at Chillicothe, and the application was made to the local agent at Vernon, Tex., and was not binding upon appellant; that for such car the application was not binding on it to furnish the same within a reasonable time or any other time. By a second supplemental petition appellee alleged, in answer to appellant's supplement, that appellee and its agents com-

monly received applications for cars to be loaded at stations other than the station where it was filed; that appellant received the application through its agent, Allman; that the proper officer in charge of providing cars for shipment received the application from the agent at Vernon, and that appellant, through its officers, acted upon such application, thereby waiving any technical irregularity as to the place from which it was made; that the car ordered was the line of cars commonly in use for poultry shipments in that part of the country; that appellant tendered no other of such character; that the application was made out by appellant's agent and only signed by the appellee; that any car suitable for such shipment would have been acceptable to him.

[1] The first assignment is based on a requested charge for an instructed verdict. Under this assignment are three propositions. The first is to the effect that notice to the local station agent at Vernon, Tex., for a car to be loaded at Chillicothe was not binding on appellant in the absence of proof that he was authorized to receive the notice; that such notice must be given to the superintendent or person in charge of transportation at the point where the car is desired. This case is not based on an alleged contract, but is founded upon a failure of duty to furnish a car within a reasonable time after application therefor. The agent at Vernon did not purport to make a contract, but only received the application, which he transmitted to the proper authority. It appears that appellant contends that there was no pleading raising the issue for a car within a reasonable time thereafter. The original petition, together with the answer and the supplements, clearly presents that as the issue, and in fact this was the issue submitted by the court. The agent who took the application testified that, while the application states the car was to be loaded at Chillicothe, the appellee told him at that time that it would be loaded in part at Chillicothe and finished loading at Vernon, and that in sending the application on that day he wired J. A. Murphy, the trainmaster, among other things: "Car to stop Vernon to finish loading." This witness further testified:

"J. A. Murphy was the trainmaster and was the proper employé of the company to whom it was my duty as local agent to forward the application for this car."

The application is dated Vernon, Tex., 12/28/16, and addressed to the agent at that place, and reads:

"Sir: I desire to ship one car of live poultry from Vernon to New York via * * * Ry., which I desire to load at Chillicothe station at 8 a. m., January 3, 1917. Please furnish a car for this shipment at the time named—L. P. T. Co. car."

This application has a notation that agents were not authorized to make promises or agreements to furnish cars for any specified time, and a statement by Strickland that he had read the notice and that there was no agreement that cars would be furnished on the date desired, or any other specified time. The agent also signed a statement to the effect that agents will, under no circumstances, agree that cars ordered will be furnished at the time specified in the order, but may promise every reasonable effort will be made to fill such order. The agent further testified:

"The railway company does not own this make of car, but they are owned by the Live Poultry Company of Chicago. There are two or three companies that own and handle this kind of car, but the Denver (appellant) usually got its cars from this particular company. The application was made to the company or to the connecting carriers when a request to furnish this car was received by defendant."

[2, 3] He stated also that cars were scarce during the months of December and January and hard to procure, and that he did not promise to get the car for any specified time. The telegrams in the record show that the application was forwarded to the trainmaster, who acted on the same and wired for the car and sought to obtain the same, and appellant finally furnished the car on the application of appellee. The application for the car was to ship poultry from Vernon to New York, but the car was to be partly loaded at Chillicothe and finished at Vernon. We are inclined to believe under the circumstances of this case the agent at Vernon had authority to make the contract for the shipment and to receive the application for the car at that point. This we do not think would be in conflict with the holdings in the cases of Railway Co. v. Cox, 103 S. W. 1121, and Railway Co. v. Belcher, 88 Tex. 549, 32 S. W. 518. The effect of the holdings in those cases and others is that one local agent has no implied authority to contract or bind his company concerning matters beyond his own station. The evidence in this case is that the local agent had authority to receive the application and that it was his duty to transmit it to the trainmaster, who was the proper officer to receive such application so forwarded. Whitley v. Railway Co., 183 S. W. 36. Further, it is pleaded and proven that the trainmaster received the order, acted on it, and finally furnished the car on the application. If there was any irregularity in making the application, the appellant, through its proper officer, waived it.

The second and third propositions under this assignment assert that, appellee having applied for a Live Poultry Transit Company car, appellant was not bound to furnish such car at all, as no such duty rested upon it and no contract was alleged or proven, and further states that neither state nor nation-

al laws require a railway to furnish a shipper any particular make of cars, regardless of the time when the same is desired. This case is not a suit upon a contract to furnish the car but upon its duty as a carrier to furnish cars for transportation of poultry. Its duty in this particular depends upon whether it was the custom to furnish such cars, or whether the law imposed upon it the duty to provide facilities for transporting poultry along its line of road. Appellant alleged that the car applied for was furnished it by the Live Poultry Transit Company when applied for. The agent testified appellant usually got its cars from that company, and either applied to it direct or to connecting carriers. The evidence in this case shows that the poultry industry was engaged in at the point of shipment, and that cars of this kind were called for and used on that line of road. The evidence also shows that there were other makes of cars used in transporting poultry, but that appellant usually used this particular make. In this case the agent wrote out the application, which evidently was a blank form furnished by the company, calling for this particular car.

[4] If the demands of the public along appellant's road demanded cars for this industry, the law, national and state, required it to furnish cars suitable for shipping. It cannot evade that duty by showing it had no such cars, or by showing it used the cars of other companies for the purpose, for in so doing it did no more than the law required in discharging its duty to the public in furnishing the necessary cars. This duty was part of the transportation under the Interstate Commerce Act, and nondelegable. The fact that it relied upon an independent agency to furnish the car will not affect its liability to do its duty toward the public. Railway Co. v. Phillips, 197 S. W. 1031. The evidence prima facie establishes that appellant relied upon the make of cars applied for to perform its public duty. There is no evidence that it had cars of its own suitable for this purpose and no proof that it could have obtained cars from any other source for the service required. In the absence of such proof we do not think appellant entitled to an instructed verdict.

[5, 6] "A railroad carrier that accepts for transportation goods of a perishable nature which require cars and equipment of a peculiar kind undertakes, in the absence of some fact changing the nature of the undertaking, that it has such cars and equipment, and that it will properly use them in the transportation of such property. In such case it is no defense that the carrier did not own or control such cars of equipment, for by accepting the property with notice, express or implied, of its character, the carrier is precluded from asserting that it did not have the means or facilities for performing the duty it took upon itself." Elliott on Railroads, vol. 4, § 1475.

[7, 8] It is also a general rule that when cars are required by the shipper reasonable notice should be given by him and a reasonable time allowed the company in which to procure the car. Id., § 1476. "As the general rule of law requires a railroad carrier to furnish cars for the transportation of the kind of goods it undertakes to carry, and as the facts constituting an excuse for the failure to furnish them when a proper request is made and freight is offered are peculiarly within the knowledge of the carrier, it logically follows that the burden is on the carrier to establish the facts constituting an excuse for the failure to furnish cars." Id., § 1477. By the Interstate Commerce Act (U. S. Comp. St. § 8563, subd. 2) it is provided:

"And it shall be the duty of every carrier, subject to the provisions of this act, to provide and furnish such transportation upon reasonable request therefor."

[9] Congress has defined "transportation" to include all cars, instrumentalities, and facilities of shipment, etc. An interstate shipment does not confine transportation to the actual voyage or trip. See above, § 8563; Railway Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 177, 60 L. Ed. 453; Railway Co. v. Smyth, 189 S. W. 70; Railway Co. v. White, 188 S. W. 714. Congress evidently recognized that the duty to the public included a variety of services that, according to the theory of the common law, were separable from the service of carriers as carriers, so that by the act of Congress the entire body of the services to be performed falls under the general head of transportation, among which is furnishing cars. So it is made the duty of the carrier to "furnish suitable" cars as part of the transportation. Appellant cites cases in which recovery for a penalty is sought under the state statutes. R. C. S. arts. 6683 et seq. Some of the cases allege as grounds therefor a contract to furnish cars at a specified time, with no allegation that they were not furnished within a reasonable time after the order. In such cases the courts held that the pleadings did not justify a recovery for withholding the cars an unreasonable length of time. Railway Co. v. Cannington, 110 S. W. 905; Railway Co. v. Arnett, 40 Tex. Civ. App. 76, 88 S. W. 448 and other authorities. In that class of cases it is usually held a party suing for a penalty is required to bring himself strictly within the terms of the statute, both by the pleadings and the evidence, and that he is charged with the burden of showing he is within the letter of the statutes authorizing a recovery of the penalty.

[10, 11] But where a railroad violates its duty and the cause of action is based on that ground and a recovery is sought for damages resulting therefrom, the burden is on it to allege and prove a legal excuse.

Railroads are quasi public corporations, and acquire thereby an exclusive privilege to carry on their business over their highways. These powers are granted with the express view of their rendering to the public adequate service. These services must be rendered impartially and efficiently. "To this end the laws impress on them the obligation to furnish sufficient facilities for the reasonably prompt transportation of goods tendered for carriage; they are bound to provide sufficient cars for transporting without unreasonable delay the usual and ordinary quantity of freight offered to them, or which might reasonably and ordinarily be expected." 4 R. C. L. p. 672; Railway Co. v. Barrow, 94 S. W. 176. This case is expressly approved by the Supreme Court in Allen v. Railway Co., 100 Tex. 525, 101 S. W. 792; also Railway Co. v. Powell, 34 Tex. Civ. App. 575, 79 S. W. 86; Railway Co. v. Smith et al., 34 Tex. Civ. App. 571, 79 S. W. 614. The Court of Civil Appeals in the Allen Case, while holding the penalty could not be recovered, held nevertheless, on rehearing, that damages could be recovered for a failure to furnish cars within a reasonable time, and also made the same holding in the case of Railway Co. v. Hughes, 99 Tex. 533, 91 S. W. 567, cited by appellant, upon motion for rehearing 94 S. W. 130.

[12] The poultry car ordered by appellee in this case was not peculiar to appellant's line of road or for that class of freight. The car ordered was the one commonly used by appellant to transport live poultry. The mere fact that it relied upon another company, which was the owner thereof, to furnish this car did not relieve it of its duty. It may be if a car of a particular make not commonly or ordinarily used by appellant in performing its service to the public should be ordered, and the company had other suitable cars for the service, that it would not be required to furnish the particular car so ordered, but the evidence in this case raises no such question. This assignment will be overruled.

[13] The second assignment complains of the refusal of specially requested charge 1a. This charge sought to have the jury instructed that in ascertaining whether appellant used diligence to procure a car that they would take into consideration the conditions surrounding the transaction at the time, such as the time of year, scarcity, etc. The court in its main charge defined reasonable diligence correctly, and further charged:

"Bearing in mind this definition, and taking into consideration the situation of defendant and its ability to furnish the particular car requested by plaintiff, you will answer the following questions," etc.

We think the court's charge was substantially the same as requested, and it was unnecessary to give further instructions thereon.

The third assignment also complains of the refusal of the court to give specially requested charge No. 2. The evidence did not require this charge. All the evidence there was as to the value of the feed given the poultry held for shipment was confined to the poultry appellee had on hand January 3d, and not for feed for poultry purchased after that time. There was no material error in refusing this charge. It is not probable that the jury found for feed of which there was no evidence.

[14] The fourth assignment is to the effect that there was error in rendering judgment on the findings of the jury that the car was not furnished within a reasonable time because, it is asserted, there were no pleadings justifying such issue. We think the pleadings presented the issue as heretofore pointed out. The proposition under this assignment is not relevant. However, we think what has been said under the first assignment answers this proposition.

The fifth assignment presents no error that will require a reversal. The proposition under this assignment we regard as substantially correct, but the evidence shows that appellee had enough poultry to load the car at the time for which it was ordered. He had about 50 per cent. of the car at Chillicothe and enough to finish the car at Vernon. The order stated the car would be shipped from Vernon, and the agent testified the appellee told him the loading of the car would be finished at Vernon and at the same time he received the order he so notified by wire the trainmaster. We think appellee discharged the burden on him. He testified he had on hand January 3d and 4th poultry to load the car at Chillicothe and Vernon. This was not disputed or controverted by the evidence.

[15] The sixth, seventh, eighth, and ninth assignments have been sufficiently disposed of under the first assignment. The question as to whether the car was furnished within a reasonable time was properly submitted to the jury under the order for the car, and the jury, we think, had evidence for finding it was not furnished within a reasonable time.

[16, 17] The tenth assignment presents as error the admission of the testimony of appellee Strickland, "that he applied to the Frisco for a similar car to the one he had made application for to the defendant on December 31, 1916, and that it was furnished to him at Vernon on January 11, 1917." The objection urged to the testimony was that it was not admissible as a comparison as the conditions were not shown to be the same with reference to the two orders. This objection should have been sustained. The evidence was improper to establish the issue of an unreasonable delay by appellant in furnishing the car ordered from it. This error, however, will not require a reversal. The agent Allman testified he knew from

Strickland that he ordered the car from the Frisco by December 31st and that it had been furnished him about the 11th or 12th of January. There were no objections to this evidence, and being substantially the same as that objected to renders the error harmless.

[18] By the eleventh assignment appellant asserts error to the admission of the testimony of George Zachary to the effect that he asked appellant for a car of the kind as applied for by appellee for shipment from Vernon on or about January 1, 1917, which appellant furnished about January 15, 1917. The same objection was made as that made to Strickland's evidence under the tenth assignment. We might dispose of this assignment on the same grounds as under the tenth assignment. Both the agent and Strickland testified to substantially the same facts as did Zachary, without objection, but there is another reason why we think this evidence admissible. Appellant furnished Zachary a car of the same make on a subsequent application, and before it filled appellee's order, thereby giving a preference to Zachary, and under the state statute, which requires the road to supply cars in the order of the applications, appellant violated that statute. If such act amounted to an unjust discrimination in giving one shipper a preference in the order of furnishing the car, it would also be a violation of the Interstate Commerce Act, and also violate the common law. As shown in this case, it certainly evidenced an unreasonable delay to postpone appellee's car until one could be furnished another shipper at the same station, upon a subsequent application. Railway Co. v. Powell, 34 Tex. Civ. App. 575, 79 S. W. 86.

[19] The twelfth assignment asserts the verdict is unsupported by the evidence. It is claimed that the appellant did all in its power to procure the car. Appellant principally relies for this assertion upon the telegrams passed between the agent and trainmaster. These wires do not show what was actually done by appellant, or why the cars could not be had. It is asserted in general terms cars were scarce, but why is not shown. The evidence shows that appellant did furnish the same kind of car on a subsequent order before appellee's car was furnished. It is also shown after the application that 26 days elapsed before the car was furnished to appellee. The agent testified:

"From my experience I state in my opinion a reasonable time in which defendant could have furnished this car was from 10 to 15 days."

He testified that under normal conditions a car of the kind ordered could be had in a few days, and that owing to the season the car was hard to get and that it was a question of finding an empty car, and in so far as he was concerned he did all he could to locate a car. The trainmaster's testimony was not given, but only his telegrams to the agent were offered and relied upon. In considering the evidence and the verdict of the jury, they evidently allowed appellant about 12 days in which to procure the car after the order was made. We believe the evidence supports the verdict of the jury.

We find no reversible error, and the judgment will be affirmed.